## J. R. BURNS *v.* THE STATE.

1. ROBBERY.— INDICTMENTS for robbery which substantially conform to
common-law precedents are good in substance under the Penal
Code of this State.
2. SAME.— To an indictment for robbery it is objected that it does not
explicitly allege that the property was obtained by the assault
made upon the owner, or by the putting him in fear. The taking,
however, is alleged to have been violent and fraudulent, and this
allegation immediately follows the allegation of the assault and in-
timidation. *Held*, that the objection is not tenable, and the indict-
ment was properly sustained by the trial court.

3. Jury Law.— Civil officers are exempted from compulsory jury service; but the exemption is a personal privilege and in no sense a disqualification. That a proffered juror was a deputy sheriff constituted no cause for challenge.

4. New Trial.— When newly-discovered evidence is assigned as cause for a new trial in a criminal cause, the application is subject to similar rules to those which govern such applications in civil cases. Such an application is closely scrutinized, and is largely confided to the discretion of the trial court; and the disposition there made of it will not be disturbed on appeal unless it be apparent that the trial court abused its discretion to the prejudice of the appellant.

5. Same.— One requisite of the newly-discovered evidence is its probable competency to change the result of the trial; and in determining whether it possesses this requisite, the proof adduced at the trial is to be considered. See the present case by way of illustration.

Appeal from the District Court of Falls.  Tried below before the Hon. J. Abbott.

The conviction was for the robbery of E. F. Davidson, and its result to the appellant a term of seven years in the penitentiary.  The charging allegations of the indictment are set out in the opinion.

E. F. Davidson, testifying for the State, said that he was a single man but a householder in Falls county, where he had resided since the year 1850.  About eight o'clock in the morning of May 16, 1878, the defendant and Dr. Goodnight rode up to witness's gate and hailed. Witness went out and talked to them for about an hour. Each of them had saddle-pockets, and they seemed to be traveling.  Goodnight was a tall man; he did the talking, and the defendant said very little.  They said they were from Colorado, and were looking for a ranche.  The defendant had a shot-gun.  After talking an hour or so, they rode off in a southerly direction.  About dusk in the evening of the same day, while witness was milking at his cow-pen, the same two men rode up and asked if they could get feed for their horses.  Witness pointed to a crib and told them to help themselves.  Then witness

started to his house, which was but a short distance off, and as he did so the defendant presented his gun at him and made him surrender, and Goodnight came up behind witness and tied him with a rope. Defendant's gun was cocked. The two men took witness up near the house and tied him to a tree. Then they demanded his money, and he declined to give it up, whereupon they said they would kill him if he did not get it for them. Goodnight then went into the house, and the defendant stood guard with his gun, over the witness. It was a moonlight night. While witness was tied to the tree and Goodnight inside of the house, Anton Hoffman, a neighbor, rode up and hailed. Defendant went to where Hoffman was, and some talk passed between them, but witness could not hear what they said. Hoffman went off, and after that Goodnight, who had had a light in the house, came out to where witness was still tied to the tree and guarded by the defendant; and they proposed to release witness if he would give up his money, and threatened to kill him if he did not. Then the witness, through fear that they would take his life, went with them to an outhouse near by and dug up his money for them. It consisted of one doubloon and ninety-nine United States twenty-dollar gold coins, and was worth $2,000, less the difference between the value of the doubloon and that of a double eagle. The money was witness's property, and he delivered it to them against his will, and because he was afraid they would kill him if he refused. Besides the money they took from witness a gold watch worth $150, a gold collar-button worth $3, a pistol worth $7, and a five dollar note in United States currency. After getting the money and other property, the defendant and Goodnight made witness go into the house and locked him in there, and then they rode away. Soon after the robbery, witness learned that the defendant was in jail at Fort Worth, and went himself to Fort Worth,

where he picked out and identified defendant, from a number of other white men in the jail, as one of the two men who committed the robbery. Witness stated positively that the defendant was one of the men.

J. R. Snodgrass, for the State, testified that in the forenoon of the day on which Davidson was robbed, he, the witness, was herding horses south of Davidson's when the defendant and another man rode up on bay horses. One of them was armed with a pistol and the other with a shot-gun. They stopped two or three hours and asked many questions about the pecuniary condition of different persons in the county, and inquired if Davidson did not get his start by stock-raising, and if he did not have a good deal of money. They said they were from the lower country and wanted to get away from there, and were looking for a location for a stock-ranche. Two or three months afterwards the witness went to Fort Worth, where the defendant was in jail, and there recognized him as one of the men who stopped with witness for two or three hours near Davidson's in the forenoon of the day of the robbery. Witness was positive that the defendant was one of the two men.

Anton Hoffman, for the State, testified that he was a tenant of E. F. Davidson on May 16, 1878, when the latter was robbed. In the night of that day witness rode to Davidson's house, to see Davidson, and hailed at the gate. After witness hailed, a man with a gun in his hand stepped out from the shadow of a tree and asked what the witness wanted. Witness replied that he wanted to see Mr. Davidson, and the man said there were some United States officers in the house, and that witness could not then see Davidson, and had better go off and come back some other time. Witness started to dismount, and then the man presented his gun at him and told him if he had any business elsewhere he had better attend to it. Witness awaited no further invitation, but rode off.

It was a bright moonlight night. The man who met witness at Davidson's gate that night suited the description of Burns, the defendant, and Burns is the same man to the best of witness's knowledge.

J. A. Williamson, for the State, testified that he lived a few miles from Davidson's, and was at home the evening of the day before the robbery, when two men rode up to witness's gate and hailed. Witness went out to them, and furnished them water for which they asked. Both of them were riding bay horses and had saddle-pockets, and one of them had a shot-gun. They seemed to be travelers, and after stopping ten or fifteen minutes at the gate they rode off. They inquired the way to Davidson's, and witness conjectured that they were some of Davidson's brothers, and therefore noticed them particularly. To the best of witness's knowledge and belief the defendant was one of the two men.

M. I. Logan, for the State, testified that in May, 1878, when Davidson was robbed, he, the witness, lived about fifteen miles south of Davidson. The morning after the robbery of Davidson, witness saw two men in the road near his place. They inquired the route to Port Sullivan. They were riding bay horses and looked like travelers. Both had saddle-pockets and one of them a shot-gun. Witness thought the older and taller of the two was Dr. Goodnight, whom he had seen at Bryan; and the other one, to the best of his knowledge and belief, was the defendant. This witness and the others who preceded him described the men, and particularly the older and taller one, in very similar terms. The State closed its case with this testimony.

Mrs. Burns, wife of the defendant, testified in his behalf. The apparent object of her testimony was to prove an alibi for the defendant. It tended to show that he was in Texas in the spring and summer of 1878, but did not account for him during the interim between the

last of April and the 13th of June of that year.  On the last-named day she arrived at Dallas from Indiana where she had been living, and met the defendant at the depot in Dallas.   From there she went to Fort Worth, and her husband was afterwards in jail there on a charge of horse-stealing.

Two other witnesses testified for the defense, but their evidence was entirely negative and proved nothing worth repeating.

After the verdict of conviction, defendant moved for a new trial on various grounds not necessary to be specified. His motion was overruled, and at a subsequent day of the term he applied for a new trial on the ground of newly-discovered evidence of a peculiar nature.   In his affidavit he stated that in the year 1878 he was in Texas, but was without a home and was a transient man in the country, and consequently was unable to produce witnesses to prove where he was at the time Davidson was robbed in Falls county.   Since his conviction, however, and since his original motion for a new trial was overruled, he had ascertained that in October, 1879, while he was in jail at Fort Worth, two men who precisely filled the description of those who robbed Davidson were tried in the District Court of Johnson county for an assault with intent to murder and rob one Dunlap, who was the cashier of a bank at Cleburne, in said county of Johnson.   That the trial of the two men in Johnson county was had before his honor the district judge before whom the defendant had just been convicted, and that his honor himself could verify the fact that the description of the men who robbed Davidson was an accurate description of the men tried at Cleburne while defendant was in jail at Fort Worth. That defendant, if allowed a new trial, could procure testimony establishing his allegations.   In the judgment rendered on the application the judge presiding embodied his reasons for overruling it, and stated that in October,

1879, two men were tried in the District Court of Johnson county on an indictment which designated them as John Jones and Bill Smith, and charged them with an assault with intent to murder one Hartsough. At their trial they suggested misnomer and gave their true names as John Spurgeon and John Ferguson. They had also been indicted for an attempt to rob a bank, and the evidence at their trial disclosed the fact that the shooting of Hartsough was one of the incidents of the attempt. They were acquitted because the proof failed to identify them as the culprits. During the trial of the present case against Burns, his honor remarked to one of the counsel that he believed he had seen Burns before, and that the description given of Dr. Goodnight suited another man who was with the former; — that Burns suited his honor's remembrance of Ferguson, tried at Cleburne as already stated. The judge, however, could not say that the defendant Burns was the man tried at Cleburne under the name of Ferguson, and in view of the evidence in the present case he overruled the application for a new trial, and the ruling is one of the errors assigned.

*Alexander & Winter,* for the appellant, filed a forcible brief and argument.

*H. M. Holmes,* for the State, filed a cogent argument in support of the conviction.

Willson, J. The first question presented in this case for our determination is the sufficiency of the indictment. The charging part of the indictment is as follows: "that one J. R. Burns and Doctor Goodnight, whose given name is to the grand jurors unknown, late of said county, on the 16th day of May, A. D. eighteen hundred and seventy-eight, with force and arms in the county and State aforesaid, did then and there, in and upon the person of one E. F. Davidson, unlawfully, wilfully and

feloniously make an assault, and him the said E. F. Davidson, by means of said assault, and by violence, in fear of his life, and bodily injury, then and there feloniously did put, and one gold watch of the value of one hundred and fifty dollars, one gold collar-button of the value of three dollars, one pistol of the value of seven dollars, one United States currency note, current money of the United States of America, of the denomination and value of five dollars, and one hundred twenty-dollar gold coin pieces, current money of the United States of America, each of the value and denomination of twenty dollars, and of the aggregate value of two thousand dollars, of the moneys, goods and chattels of the said E. F. Davidson, from the possession, and against the will of him the said Davidson, then and there violently and fraudulently did take and carry away, with the intent then and there of appropriating the said property of the said Davidson to their own use and benefit; contrary," etc.

After conviction, the defendant moved in arrest of judgment upon the ground that the indictment "does not allege that the said Davidson was induced by means of the assault and violence against him, alleged to have been committed by the said Goodnight and Burns, to give up to them the property alleged to have been taken, or that said property was obtained from the said Davidson by the said Goodnight and Burns, by reason of, or by means of said alleged violence and said assault." The motion in arrest of judgment was overruled, and this action of the court is now assigned as error.

The indictment pursues substantially the common law precedent of an indictment for robbery, and would, we think, be a good indictment at common law. (Wharton's Precedents, 410; 2 Bishop's Cr. Proc. 1002.) This court has decided that the common law form of indictment for this offense will suffice. (*Reardon* v. *State*, 4 Texas Ct. App. 602; *Bell* v. *State*, 1 Texas Ct. App. 598.)

The Code defines robbery as follows: "If any person, by assault, or by violence and putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property, with intent to appropriate the same to his own use, he shall be punished," etc. (Penal Code, art. 722.) The indictment, we think, contains every element of the offense of robbery as defined above. It is earnestly contended by counsel for defendant that it is not alleged that Davidson was induced to part with his property, or that it was obtained from him, by the assault, or putting him in fear. After charging the assault, and the putting in fear, the allegation of the taking immediately follows, and the taking is alleged to be *violent* and *fraudulent*, and in our opinion this fully answers the objection urged by counsel. We think there was no error in the judgment of the court overruling the defendant's motion in arrest of judgment.

Numerous objections have been ingeniously presented to the charge of the court, and argued with much ability by counsel for defendant. We have, in the light of this argument, carefully scrutinized the charge of the court, in connection with the evidence in the case, and we cannot concur with counsel in their objections. We think the charge of the court, taken as a whole, is the correct law of the case, and as favorable to the defendant as the facts would warrant. It is plain, direct and easily comprehended, and not calculated to be misunderstood, or to mislead.

The defendant assigns as error the judgment of the court overruling his motion for a new trial. One ground of this motion is that he was required by the ruling of the court to accept or reject a disqualified juror. One Carmichael was presented as a juror, and he was challenged for cause by defendant,— the cause of challenge being that said Carmichael was a deputy sheriff. The court overruled the challenge, and the defendant then

challenged the juror peremptorily. In this ruling the court did not err. The fact that Carmichael was a deputy sheriff did not disqualify him as a juror, and was no cause for challenge. (Code Crim. Proc. art. 636.) A civil officer is exempt from jury service, should he see proper to claim the exemption. (Rev. Stats. art. 3014.) But this exemption is a personal privilege of the juror, which no one but himself can claim the benefit of, and is in no sense a disqualification.

Another ground for new trial which is strenuously insisted upon by defendant is that since the trial the defendant has discovered material evidence in his defense, which he could not by any reasonable diligence have before discovered. The same rules govern motions for new trial in criminal as in civil cases, where newly-discovered evidence is the ground of the motion. (Code Crim. Proc. 777; *Bell* v. *State*, 1 Texas Ct. App. 598.) Applications for new trial upon this ground will be scrutinized with much strictness. They are addressed much to the discretion of the court, and where the court has refused such an application, the appellate court will not reverse, unless it shall appear that the court below has abused its discretion, and that thereby injustice may have been done the party. (*Mitchell* v. *Bass*, 26 Texas, 372.) It is a well settled rule, that to entitle a party to a new trial upon the ground of newly-discovered evidence, the evidence must be such as would likely change the result. (*Gaines* v. *State*, 41 Texas, 334; *West* v. *State*, 2 Texas Ct. App. 210; *Johnson* v. *State*, Id. 456; *Higginbotham* v. *State*, 3 Texas Ct. App. 447; *Blake* v. *State*, 3 Texas Ct. App. 581; *Haselmeyer* v. *State*, 6 Texas Ct. App. 21; *Brown* v. *State*, 6 Texas Ct. App. 286; *Templeton* v. *State*, 5 Texas Ct. App. 398; *Hutchinson* v. *State*, 6 Texas Ct. App. 468.) The court below evidently did not think that the newly-discovered evidence was of a material character, or such as would be likely to change the result upon

another trial. In view of the positive and overwhelming nature of the evidence of defendant's guilt shown by the record in this case, we agree with the trial court that this newly-discovered evidence, even if it were admissible, would not be at all likely to change the result.

We have discovered no material error in the proceedings in the court below, and the judgment of conviction is affirmed.

*Affirmed.*