T. J. ROBINSON v. THE STATE.

No. 13493. Delivered May 14, 1930.
Reported in 28 S. W. (2d) 158.

The opinion states the case.

*Charley Howell* and *W. J. Baldwin* of Beaumont, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of eighteen years.

Ernest Nichols was shot and killed by the appellant. Three bullets entered the body of the deceased: one in the back near the side between the left shoulder and the hip and two others in the center of the back. Several eye-witnesses for the State testified and described the encounter. These witnesses were in practical agreement in their relation of the incidents of the tragedy. Israel Guidry related the matter in substance as follows: 'After dark on the 29th of December, 1928, Ernest Nichols was sitting on a chair on the sidewalk near Elmo Maple's restaurant. The appellant appeared and opened a conversation, taxing Nichols with having told Odelia Long that the appellant had stolen some clothes belonging to Nichols. This Nichols denied. After a few moments the appellant walked up to Nichols and said: "You are a negro who loves to show off. Walk back on the street. I want to settle that with you." The witness was standing right close to the parties. After stating, "I want to settle it with you," the appellant walked out on the sidewalk. Nichols followed him, leaving his overcoat on the chair. The appellant stepped off the sidewalk and Nichols turned and walked towards the chair where he had been sitting. From the witness we quote:

"When Nichols turned around and started back to the chair, he reached for his overcoat. Robinson then fired the first shot. Nichols' back was towards Robinson. Nichols jumped, grabbed the clothing of the witness and said, 'Oh, Lord, don't let him shoot me any more.'"

The witness jerked loose. The deceased continued hollering, "Don't let him shoot me any more," and fell on his knees in the middle of the sidewalk. While he was down on his knees, Robinson stepped upon the sidewalk and shot Nichols twice in the back. The witness was very close to the parties during the entire encounter. When the shots were fired, the pistol was within six or seven inches from the back of Nichols. When the first shot was fired, Nichols was doing nothing. The witness saw no knife in his hand. After the first shot was fired, he saw a knife lying on the cement floor and saw Robinson kick the knife up close to Nichols.

Odelia Long testified that she did not tell the appellant that Nichols had said that the appellant had stolen his clothes.

Elmo Maple related the beginning of the encounter in substance as did Guidry, stating that when Nichols denied making the statement imputed to him by the appellant, the latter said: "Well, we have got to prove this." Nichols said that he wanted no trouble. Appellant said: "Come on down to the corner and we will settle

this." Nichols replied: "Sure, I will go with you anywhere and settle it." At that time Nichols was sitting in the chair. He got up and followed the appellant who was three or four feet in the lead. After they had gone about eight feet, Robinson stepped off the sidewalk and Nichols stopped and started back to the chair where he had left his coat. Guidry hollered, "Look out," and Robinson whirled and fired. Three-fourths of Nichols' back was toward Robinson. Nichols got on "all-fours," grabbed Guidry and hollered, "Oh, Lord, don't let him kill me; don't let him kill me." Guidry released himself and Nichols fell into the street. Robinson went up and shot Nichols in the back while he was hollering, "Don't kill me." The witness saw no knife in the possession of Nichols.

Freeman, a policeman, heard the shot fired and saw a pistol in the hands of Robinson. He took the pistol away from him and made the arrest. He saw the deceased, who was dead, lying on his face. He saw no knife.

Walker, another eye-witness, testified that while Nichols was sitting down, Robinson said to him: "Come on, go around the corner; we will settle this." Nichols said he would do so, and opened a knife which he put in his pocket. Robinson at the time was standing at the edge of the sidewalk. They started off, Robinson walking sideways and Nichols following him. As they got about half-way across the street some one hollered, "Look out," and Nichols ran. As he reached the sidewalk Robinson fired the first shot. Nichols hollered, "Don't let him shoot me," and grabbed Guidry saying, "Don't let that fellow shoot me any more." He fell down on his knees and crawled like he was trying to make it back to where his overcoat was and to get away from Robinson. While Nichols was on his knees, Robinson came up and shot him twice in the back. The witness saw no knife in the hands of Nichols. The parties were about 10 or 12 feet apart when the first shot was fired.

Tom Lewis, for the appellant, testified that he was passing and picked up a pocket knife near the body of Nichols and that he gave it to Freeman. The blade of the knife was open. The knife (handle and all) was about four or five inches. The witness' attention was attracted by the firing of the first shot. The body was falling and grabbing after another man. He saw Robinson with the gun in his hand and saw Nichols fall on his knees. He saw nothing in the hands of Nichols. He picked up the knife afterwards. When Nichols fell, he was trying to grab Guidry, and

the witness saw no knife in Nichols' hand. When Guidry broke away and while Nichols was down on his shoulder and face, Robinson stepped up close to him and fired three more shots. Nichols was not dead at that time.

The appellant testified that after accusing Nichols of making the statement to Odelia Long, he told him that he ought to straighten it up. Nichols called him a vile name and said, "I will straighten it up." Appellant said:

"There ain't no need of that. I said, 'Let's go.' He says, 'I will go anywhere.' I just walked off. When I walked off, I was already scared of him. * * * When I walked off I looked over my shoulder like that, and I seen him advancing. I don't know whether it was a pistol or not, so I just whirled and shot him three times. I thought it was a pistol he had. I later discovered it was a knife. That is the same knife that Tom Lewis testified about."

Appellant also testified that his life had been threatened by Nichols on several previous occasions.

Willie Jones, the newly discovered witness, was walking on the street and heard loud talking which he could not understand but supposed it was just an argument. He said:

"I believe that black boy started to walk off, and the other one started to following him. Well, the other fellow had a knife in his hands, if I am not mistaken. It was something shining and it looked like a knife. * * * That was just prior to the firing of a pistol."

A reversal is sought upon the ground that the trial court erred in overruling the motion for new trial in which there was set up the newly discovered evidence of the said Willie Jones. It is well settled that unless the newly discovered evidence, upon another trial, would probably result in a verdict more favorable to the accused, the reviewing court would not be authorized to set aside the verdict. See Branch's Ann. Tex. P. C., p. 129, sec. 201, subd. 5, and numerous cases therein collated, including Blake v. State, 3 Tex. Ct. App. 581; Mitchell v. State, 38 Tex. Cr. R. 170; Burns v. State, 12 Tex. Ct. App. 269; Bruce v. State, 31 Tex. Cr. R. 590. Many others will be found collated in Vernon's Ann. Tex. Crim. Stat., 1916, Vol. 2, p. 786. The decision of the probable effect of the new evidence is primarily for the judge of the trial court in passing upon the motion for new trial. If under all the facts of the case it was within the judicial discretion of the trial court to overrule the motion, it is not within the scope of the authority of this court to overturn the holding. . See Vernon's Ann. Tex. C. C. P., 1925,

Vol. 3, p. 15, note 26; also Lewis v. State, 82 Tex. Cr. R. 285; Gordon v. State, 88 Tex. Cr. R. 17; Ansley v. State, 91 Tex. Cr. R. 435; Johnson v. State, 91 Tex. Cr. R. 441; Banks v. State, 95 Tex. Cr. R. 384; Viser v. State, 98 Tex. Cr. R. 201. As applied to the facts of the present case, the fact that the appellant began the quarrel upon a spurious charge against the deceased; that he invited the encounter; that he had previously armed himself with a pistol for the purpose, he says, of protecting himself against an assault by the accused; that he shot the deceased in the back; that the deceased had an open pocket knife in his possession at the time he was killed, are not brought into question by the newly discovered evidence. The witnesses for the State who described the encounter from the beginning to end were apparently disinterested. They were on the spot. The killing occurred in the nighttime. The new witness was across the street and in a position far less favorable than that of the State's witnesses to observe the incidents of the encounter. He was not near enough to distinguish the spoken words. All the witnesses for the State and Lewis, (an eye-witness for the appellant), concur in their testimony to the effect that at the time he was shot the deceased had turned away from the appellant. Lewis, who picked up the knife after the death of the deceased, said:

"I did not see him with the knife in his hand when he fell, and I did not see him advancing on Robinson with his knife. He was trying to get away the first shot. Best I could see it, he was trying to run,—to get away."

In the light of all the facts the opinion is expressed that this court would not be warranted in declaring that in overruling the motion for new trial the learned trial judge abused the discretion which was vested in him by the law of the land.

There are no other matters calling for a discussion.

The judgment is affirmed.

*Affirmed.*