J. P. JONES v. THE STATE.

No. 23088. Delivered March 21, 1945.
Rehearing Denied May 16, 1945.

The opinion states the case.

*Harvey P. Shead,* of Longview, *Gerald G. Mann,* of Dallas, *P. O. Beard,* of Marshall, and *McAllister & Tucker,* of Nacogdoches, filed briefs for appellant.

*Sam B. Hall,* County Attorney, and *Robert M. Sikes,* Assistant County Attorney, both of Marshall, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the unlawful killing of L. E. Richardson, and by the jury given a penalty of five years for murder without malice. Hence this appeal.

The testimony shows that the deceased and his son, Gene Richardson, had a filling station in the town of Waskom, in

Harrison County. That this filling station had four gasoline pumps out near the highway, and a drive-in between pumps and the station. Near this station's driveway was a hedge and some vacant lots belonging to a sister-in-law of appellant's over which he had control. We conclude from the evidence that trucks, customers of deceased, had been parking on, or turning around on, this vacant lot next to this filling station driveway. On June 24, 1944, some one had placed three posts in the ground close to or in the driveway of such station, and during the day these posts had been pulled up and laid aside. Appellant appeared at the Richardson filling station and wanted to know who pulled these posts up, and the deceased denied having done so; and after some words had passed between them, the State's witness said Mr. Jones,—after saying to deceased: "You will put them (the posts) back up,"—departed, and after possessing himself of a pump shotgun, and loading the same with three shells, he returned. At such time the deceased was sweeping the driveway, and placing his broom against the station, he went to meet appellant, who got out of his car with the shotgun in his hands. Appellant testified that the deceased cursed him, and, having a pistol in his hand, continued to advance, appellant backing up until Mr. Richardson coming close to one of the pumps and a telephone pole, appellant, thinking the deceased was going to shoot him, fired one time on deceased, inflicting wounds upon him that later caused his death. The son of deceased and other State witnesses denied that deceased was possessed of a pistol, and the son of deceased testified that immediately after the father was shot, he went into the filling station and opened a drawer of a desk and obtained a "derringer" and attempted to shoot appellant, and also the tires on appellant's car, but the weapon would not shoot. Some of appellant's witnesses testified to seizing a pistol in the hands of deceased when he was shot.

This cause was called for trial in the district court at Marshall, Texas, on September 25, 1944, and each side announced ready for trial. After a selection of a jury five witnesses for the State were heard before the court and jury. On that night appellant was stricken with some malady, sometimes called a gall bladder affection; at other times a blocked kidney disease. In any event, on September 26, 1944, in the morning, the second day of the trial, the facts was made known to the trial court that appellant would not be able to attend court because of such affliction, and the trial was postponed until the following day; the jury being retained. On the following day, September 27, 1944, appellant's attorney filed a motion, called a first motion for a continuance, which contained, among other things, the following:

"That on the morning of September 26th the defendant, J. P. Jones, was stricken with gall bladder trouble and was confined to his bed and was unable to attend court; that the Court passed and continued the case during Tuesday to determine whether the defendant be able to appear in person on September 27th at 9 AM, and continued the trial of said case.

"The defendant by his attorneys would show to the Court that the defendant is still confined to his bed with an acute attack of gall bladder trouble, and that he will not be physically able during this week to attend court in person; that said condition of the defendant is caused by no fault of his, and such condition can be verified by reputable physicians in attendance upon him.

"Wherefore the defendant by his attorneys withdraws his announcement of ready for trial and prays the court that said cause be continued until such time as in the discretion of the Court may deem proper in order that the defendant may be physically able to appear in person and attend to his defense and testify in his behalf.

"P. O. Beard
"John E. Taylor
Attorneys for Defendant.

"Subscribed and sworn to before me, the undersigned authority, this the 27th day of September 1944.

"Jack A. Moore
"(Seal) "Clerk District Court
Harrison County, Texas."

On the same day the trial court acted thereon by means of the following order:

"No. 18188
"The State of Texas
vs "In the District Court of
J. P. Jones Harrison County, Texas.

"On this the 27th day of September 1944 came on to be heard application of the defendant to withdraw his announcement of ready for trial and continue this cause; and the Court, after fully considering same, finds that this case went to trial on the 25th day of September 1944, both the state and the defendant having announced ready for trial; that thereafter the jury was empaneled to try said cause; the defendant was arraigned and plead not guilty, the indictment was read to the jury and the defendant plead not guilty to the indictment; that the state introduced evidence in this cause until about 6:30 P. M. on that date, and the Court then adjourned until 9 o'clock A. M. Sep-

tember 26, 1944; that before the Court convened on said date the defendant was taken violently ill at his home in Harrison County, Texas, and was attended by his physician, Dr. H. H. Vaughan; that Dr. Vaughan testified that the defendant was suffering from a blocked kidney and was confined to his bed and was not able to attend the trial of the cause on the 26th of September 1944, and that he was at that time under treatment by Dr. Vaughn. The Court then adjourned until 9 o'clock September 27, 1944. Whereupon Dr. Vaughan testified that the defendant was still in serious condition, only partially conscious, and in bed and was not able to attend the trial of this case on the 27th day of September 1944, and that in his opinion it would be several days before the defendant would be able to be out of bed, and that he had no assurance that he would be able to attend the trial of his case at this term of the Court.

"The Court finds that on the 27th day of September 1944, about 10 o'clock AM, the defendant filed his motion in the Court withdrawing his announcement of ready for trial, because of his condition; and, because he would be unable to attend the trial of his case, requesting the Court to permit him to withdraw his announcement of ready for trial and that this case be continued until the next term of this Court.

"The Court finds that the matters set forth in said application for continuance are true; and, it is therefore ordered by the Court that the defendant be and he is hereby permitted to withdraw his announcement of ready for trial and that this cause be continued on said application until the next term of this Court.

"W. H. Strength
"Judge Presiding."

Under and by virtue of this order this jury was discharged, and the cause continued for the term.

At the succeeding term of that district court Judge Walter H. Strength, the regular judge thereof, exchanged benches with Judge S. H. Sanders, who tried the present case. At such trial appellant had prepared, filed and presented to the court a plea of former jeopardy, attacking the order of Judge Strength, and alleging that he having once been placed in jeopardy on the indictment charging the unlawful killing of L. E. Richardson, that he could not again be placed on trial thereunder. Judge Sanders did not sustain such plea, and the cause proceeded to

trial. Appellant has filed exhaustive briefs relative to such plea, and we will proceed to consider the same.

Unquestionably, as suggested in appellant's brief, at the early English common law, no person could have been twice placed in jeopardy for the same offense, regardless of the reason for the second trial,—15 Am. Jur., p. 38,—but, as again suggested, in order to serve the ends of justice, this ancient rule had to be relaxed and certain exceptions began to enlarge upon its rigidity,—see 15 Am. Jur., p. 75, as is shown by Art. 551, C. C. P., which provides for a continuance after trial is begun by either the State or the defendant "when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial can not be had." Art. 680, C. C. P. provides after the retirement of the jury in a felony case, the sickness of a juror will allow the discharge of the jury. Art. 682, C. C. P. allows for the discharge of the jury upon their failure to agree upon a verdict. Art. 684, C. C. P. provides when a jury has been discharged for any of the above reasons, the case may again be tried at the same or another term of the court.

We are cited to the case of Mahala v. State, 31 Am. Decisions, p. 591, wherein it is stated as a ground for the discharge of the jury, among others: "or is himself (the prisoner), by the visitation of providence, prevented from being able to attend to his trial." The authorities are so numerous and so consistent in holding that the sickness of a defendant will justify the trial court in discharging the jury, and will not result in validating a plea of former jeopardy that a citation of authorities in practically every state of the Union is not deemed to be necessary. In fact, as we understand appellant's brief, it is in accord with the doctrine laid down by Judge Hurt in Powell v. State, 17 Tex. App. 345 on p. 363; "The following facts, however, will relieve the case of jeopardy, and authorize a second trial of the defendant for the same offense: Sickness of the judge, a juror or the prisoner (of course), death or insanity of the judge or a juror, or expiration of the term of the court before verdict, and, lastly, failure of the jury to agree on a verdict."

The only point at difference still existent between the State and defense is the proposition advanced by appellant that the careful trial court exercised arbitrary discretion and not a judicial or legal discretion in determining the illness and seriousness of appellant's affliction at the time he granted appel-

lant's attorneys' motion for a continuance and discharged the jury. It is granted that the trial court had no discretion to arbitrarily discharge this jury on rumor, or other flimsy opinion or statement calling to his attention some illness or fancied ailment from which appellant was supposedly suffering, and that such information would not support a discharge of the jury in an accused person's absence has been so held in the case of Upchurch v. State, 36 Tex. Cr. R. 624. In that case the jury were discharged at nightime, caused by a neighbor to one of the jurors informing the sheriff of the sickness of the juror's wife; whereupon at nighttime from his hotel room, some blocks away from the court house, the trial judge directed the sheriff to discharge such juror, which was done. In the morning, the accused finding but eleven jurors present, objected to proceeding therewith, and the court discharged the remaining jurors, and that such proceedings outside the presence of the accused was error, and that this matter of the illness of the juror's wife should have been ascertained by the court in the presence of the accused. In the Upchurch case the court only used the ex parte statement of a deputy sheriff that he was informed of the sickness of the juror's wife, and such was not sufficient in the absence of some judicial ascertainment thereof, and statement relative thereto by the court.

In the case of Woodward v. State, 58 S. W. 141, it is said:

"In declaring a mistrial, he (the trial judge) must, as stated above, exercise a sound legal discretion. He cannot do it capriciously. If the facts which he finds and announces in his judgment show a legal necessity for a mistrial, a reviewing court will affirm his judgment. If no such necessity is shown, his judgment will be reversed."

There is really but one question to be decided relative to this plea of former jeopardy, and that is: Did the trial judge act capriciously and on insufficient information in discharging the jury in the September trial, or did he properly ascertain the true facts as nearly as possible before taking any action on the motion for continuance?

It is shown by the motion for a continuance, sworn to by two attorneys of appellant, that appellant was ill and in no condition to further attend the trial of his case, and would probably not be able to do so during the week. These affiants were officers of the court and surely worthy of belief by the court. It is further shown by the trial court's order that the doctor

in attendance upon appellant testified as to the appellant's condition, and to his opinion as to the inability of an early attendance upon the trial, and under such facts evidently the judge thought he had sufficient dependable evidence to base a finding upon. It is true, the doctor denied having come to the court house at all at any time relative to this first trial, but did admit conversations with the trial judge, as well as a telephone conversation, and did admit that he made the statement that the appellant would doubtless not be able to attend the trial that week. Not only does the judge's order state that the doctor testified, but it also is shown by two witnesses that the doctor was present in the court room while the matter of appellant's condition was being discussed between himself, the attorneys for the State and the attorneys for the defendant.

As to the doctor's presence in the court room, the court reporter's testimony shown in the bill of exceptions is as follows:

"I don't recall about Dr. Vaughan being in the court room on Tuesday. I saw him there in the court house it seems. I do recall him being in the courtroom on Wednesday morning, September 27th. I recall Judge Beard, John E. Taylor, Judge Walter H. Strength, yourself (Mr. Hall) and Robert M. Sikes all in a conversation here in the courtroom, and Dr. Vaughan was here. Just who all participated in the conversation I couldn't say. Dr. Vaughan talked to Judge Walter H. Strength. I was sitting at my desk and heard very little of the conversation; they were talking and standing about the northwest corner of the counsel table, and that was a short while before the jury was discharged."

Soon thereafter the trial judge gave the following oral charge to the jury, which was taken down and transcribed by the court reporter:

"Gentlemen: There has been a very unfortunate situation that has arisen in this case. It has been hard on you and everbody else, because we would have been almost through with the case if we had gone on yesterday.

"The defendant, Mr. Jones, sometime Monday night was taken ill with a blocked kidney. Dr. Vaughan his physician has been in communication with all of us since. Yesterday morning he, (the doctor) said possibly he was coming out of it during the day. For that reason we held you over. We had about all of the State's testimony in. This morning he says he is still in bed and he doesn't know when he will be able to be here. We can't

try a man during his absence. The greatest hardship was keeping you people together yesterday. We thought we could finish it today. It is something nobody is responsible for. Mr. Taylor came from Austin to try the case and wants to try the case and nobody can help it. The only thing I know is to discharge the jury. I thank you. I would have let you gone yesterday except the doctor said he might be here this morning. Inasmuch as he can't be here, nothing to do but discharge the jury. So, you are discharged."

Dr. Vaughan, the physician in attendance upon appellant, denies that he was ever in the court house relative to this matter, but says that he did have a conversation with Judge Strength in Marshall on a street corner, and remembers nothing relative to being in the court house and talking to the judge therein. That he told the appellant's then lawyers that appellant could not come to court that day; the following day, Wednesday, he talked to Judge Strength over the phone and told him that appellant was still unable to come to court, and he couldn't have attended court any day that week. Mr. Hall, the county attorney, testified, as is shown by this bill, as follows:

"Dr. Vaughan did appear here in the court room and we had a round table discussion, Mr. Taylor, Judge Beard, Judge Strength, and the attorneys for the State. At that time Dr. Vaughan stated to Judge Strength that the defendant was unable to attend court."

It seems to be shown by common consent that Dr. Vaughan was not placed upon the witness stand, nor his statement or testimony taken down by the court reporter. It is also shown by the doctor, as well as by appellant, that appellant did not personally agree to the discharge of this jury.

We express the opinion that the facts show that the trial judge diligently inquired into the physical condition of appellant, and was justified in arriving at the conclusion that he would be unable to appear in court for the remainder of the week; that he did not act arbitrarily nor capriciously in discharging this jury. In granting this first motion for a continuance, it was made to appear to the satisfaction of the court that by the unexpected occurrence of appellant's sickness since the trial began, a fair trial could not be had. We think the court could rely upon the statements made in the motion for continuance, sworn to by appellant's attorneys, as well as the communications with the attending physician, and could not be expected to hold this jury for probably a week to await appellant's recovery. This bill is overruled.

Bill of exceptions No. 2 complains relative to the verdict returned by the jury. Appellant had filed a request for a suspended sentence, and such matter was properly presented to the jury. The jury merely returned a verdict of guilt and made no mention therein of a suspension of sentence. It is shown by a reference in the bill to the testimony of two jurors that the jury refused to suspend the sentence, after consideration thereof. Juror Stringfellow testified at the motion for a new trial: "Yes, I mean 11 wouldn't agree to give it, (suspended sentence) and I finally went over and agreed to give a verdict without the suspended sentence."

Juror Gibson testified: "We 12 agreed not to give it (suspended sentence) to him and brought in a verdict without it."

The failure to mention the matter (suspended sentence) in the verdict implies the decision of the jury against the suspended sentence. Harper v. State, 44 S. W. (2d) 1110; Potter v. State, 71 Tex. Cr. Rep., 209, 159 S. W. 846; Bonds v. State, 92 Tex. Cr. R. 394, 244 S. W. 382.

With reference to bill of exception No. 3, we do not think that trial court abused his discretion in keeping the jury together after they had announced they were hopelessly deadlocked. They deliberated from 7:30 P.M. one day until about that time the next day, and we do not think 24 hours deliberation too long in a case of this character, nor was such length of deliberation any evidence of a coercion upon the part of the trial court.

Bill of exceptions No. 4 relates to a newly discovered witness, C. P. Tabor, who it was claimed was a witness to the fatal shooting, and whose identity was not known until after the trial had been concluded. The testimony as to what the witness saw is contained in his affidavit, the material portion thereof reading as follows: "As I looked across to the station, I saw a man standing there with a shotgun by the side of the Esso Station between the station and the highway. I saw another man step behind the pump and from the pump step to the telephone pole and I saw him raise his hand in a shooting position and the man with the shotgun standing between the station and the highway fired. The man who was shot as he raised his hand had something in his hand, but I could not swear what it was."

We do not think the witness' testimony is sufficiently explicit to have had any material weight or bearing with the jury. Again,

stronger testimony than that of Mr. Tabor was present before the jury from appellant, who said the deceased presented a two-barreled derringer and pointed it at him. Nancy Jones testified Mr. Richardson had a gun or pistol in his hand when appellant shot him, a little black pistol. John Peake testified that the deceased had something in his hand and was advancing upon appellant; deceased would raise his hand and appellant would back up; that after the deceased was shot, Gene, the deceased's son, went out close to the deceased and picked up something, and then pointed a pistol at Mr. Jones. Mrs. Lucy Vaughan Jones, appellant's wife, and a daughter of Dr. Vaughan, testified that she saw the difficulty; when Mr. Richardson was shot he had something in his hand; she couldn't tell what it was, but deceased raised his hand twice; he had something in it. Mr. McCracken testified that after Mr. Richardson was shot he saw Gene pick up a pistol near the shooting. Jim Tucker testified he saw the difficulty; Richardson's hands were down at his side, he had an object fooling with it; he could not tell what; looked like he was trying to put it under his belt or between his belt and person; he was advancing on Mr. Jones; Richardson raised his arm and Jones fired.

The newly discovered evidence is not as strong as most of the evidence above summarized. Nowhere does the newly discovered witness say that he saw a pistol, but merely saw the deceased raise his hand at the time he was shot. Appellant had testimony, and presented the same, much stronger than that of the new witness, and in our opinion had the witness been present and testified it does not appear that it is reasonably probable that it would change the result of the trial. See Branch's P. C., p. 124, Sec. 192, 201, p. 128, and Sec. 203, p. 130, and many cases cited thereunder. We think the trial court acted within his sound discretion in overruling the motion for a new trial on the ground of newly discovered evidence. See Art. 753, Vernon's Ann. C. C. P., and notes thereunder. The case of Robinson v. State, 116 Tex. Cr. R. 523, 28 S. W. (2d) 158, impresses us as being in point hereon.

Bill of exceptions No. 5, we think, evidences no error. It relates to the keeping of the jury together approximately 24 hours before a verdict was arrived at by them. The juror Stringfellow, the last one to agree upon the verdict, testified: "I had to make my decision. I felt like we ought to get together some way and get out." He also testified that on the first ballot there were 10 for conviction and 2 for not guilty; but on the next morning all twelve voted guilty, but stood 11 to 1 against

a suspended sentence; the jury then requested the reading of certain testimony; finally the juror agreed to not give a suspended sentence, and they then returned the present verdict. "We all 12 agreed that his sentence would not be suspended and brought in that verdict."

Many verdicts are arrived at through matters of compromise, argument, exchange of views and discussion among the jurors, it being a proposition of give and take between the different jurors, and we see no evidence of misconduct upon the part of the jurors, nor coercion upon the part of the trial judge shown in this bill.

What we have heretofore said relative to the conduct of the jury disposes of bill of exceptions No. 6, and it is overruled.

We see no error presented in the trial of this cause, and the judgment is therefore affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant again urges several matters presented on original submission as errors calling for a reversal, but especially stresses the question of former jeopardy arising from the discharge of the jury on a former trial because of the illness of appellant. No point other than the one last mentioned calls for further consideration.

It is not seriously contended by appellant that the information upon which Judge Strength acted in discharging the jury was not sufficient to authorize such action, but the contention is that the information was not acquired by said judge in such manner as would support a "judicial ascertainment" of the fact of appellant's illness, and, therefore, that the act of discharging the jury could not have been the exercise of "judicial discretion" as to the fact of appellant's illness.

When the question of appellant's illness was first made known to Judge Strength on September 26, 1944, the information reaching him at that time was not acquired in such manner as, in our opinion, would have justified the exercise of "judicial discretion" in then discharging the jury. We assume that Judge Strength was of the same opinion for he held the jury together and passed the case over until the next day to see if appellant

might then be able to be in court so that the trial could proceed. On the morning of September 27, 1944, appellant's attorneys, reputable members of the bar, presented to Judge Strength the sworn application set out in our original opinion to which we refer without burdening this opinion with a repetition. In our judgment this application made under oath by said attorneys, and not in any way controverted, would have supported a "judicial ascertainment" of the fact of appellant's illness which justified the discharge of the jury, and continuance of the case. However, in addition thereto, the evidence heard by the judge upon the present trial, while in conflict, supports the conclusion that Judge Strength caused appellant's attending physician to appear in the court room where a discussion was had with him in the presence of said judge, the attorneys of appellant and those representing the State. While the evidence shows that the physician did not give his statement as to appellant's condition under the formalities of an oath, yet the recitals in the order discharging the jury,—which also appears in our original opinion—indicates that the careful trial judge accepted the statements of the physician as though having been made under oath. Of course, it would have been more regular to have had the physician give his evidence under oath, and if this had been done the question of former jeopardy might not have been raised. All parties appear to have waived the formality of an oath being administered to the physician. The representatives of the State were not controverting the fact of appellant's illness, nor protesting the discharge of the jury, and appellant's attorneys were urging such action under their sworn application. We regard it as unnecessary to decide whether the physician's unsworn statement under the circumstances here occurring would have furnished the judge who discharged the jury with evidence from which he could "judicially ascertain" the fact of appellant's illness. He was already in possession of sufficient information from the sworn application of appellant's attorneys.

The motion for rehearing is overruled.