### EX PARTE PLEASANTON F. PITTMAN.

No. 25813. April 9, 1952.
State's Motion for Rehearing Denied May 7, 1952.

*J. P. Darrouzet,* Austin, for relator.

*George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

This is an original application for the writ of habeas corpus, by which relator seeks his discharge from the penitentiary of this state, where he claims he is illegally restrained under a void judgment and sentence.

We granted the filing of the application and directed the development of the facts, as provided and contemplated by Art. 119, C. C. P., as amended.

The facts developed are now before us.

Relator was charged in the 53rd Judicial District Court of Travis County, by indictment, with the offense of felony theft.

On March 7, 1952, the case came on for trial and, as relator had no counsel, the trial court appointed counsel to represent him. Thereafter, relator in person and through his counsel waived trial by jury and entered his plea of guilty, and sought a suspended sentence. All procedural requisites to a plea of guilty were complied with. The relator introduced evidence in support of the application for suspended sentence.

At the close of the testimony, the trial court took the case under advisement as to the suspension of sentence. What happened thereafter is best shown by quoting from the testimony of the trial judge, as follows:

"I got off the bench and went down and sat down with him (relator) and his attorney, and Mr. Blackwell, Assistant District Attorney, stood by, and I talked to this man and told him that I was not satisfied with his application for suspended sentence and that I didn't think that I would grant it; that I didn't think he was the type of man for whom a suspended sentence was intended; that it appeared he was an alcoholic, an habitual drunkard, and that he was not doing any good in this community, and that I would not suspend his sentence and let him stay in this community because I thought he would not be able to get along any better in the future than he had in the past. But I said to him, 'If I do grant you a suspended sentence in this case would you go back home to McKinney, where you say you have lived, and take care of your mother and father, who are in bad circumstances, and would you go at once if I ordered you released?' And he said, 'Yes, sir, that is exactly what I have in mind doing, and if released I will go home at once.' I then turned to

Mr. Blackwell and said, 'Well, if he will do that I believe that might be a good solution of this case. If he will go back to McKinney and stay there as he promised me he will, I believe I will consider doing that.' Mr. Blackwell agreed with me that that might be agreeable, and Mr. Darrouzet thought that was a good solution, and that the condition was a reasonable condition to put on the suspended sentence. I then said, 'I will do that,' and I got back on the bench and said, 'I will accept the State's recommendation of five years and suspend it,' and I recognized him in the sum of $1,000 and ordered him released so that he could go back to McKinney. He certainly could not go back as long as he was held in jail without bond. I made the discharge conditioned on his leaving at once. He was discharged by the sheriff's office, and I later signed a little memorandum on the docket sheet, which is a printed form rather than writing it out each time. I signed that at that time just as a notation."

A few days thereafter, the trial judge learned of the fact that relator had not "left town" as he had agreed, but was still in Austin and had been arrested for drunkenness. The trial court ordered relator into court and his appointed attorney also appeared. We again quote from the testimony of the trial judge as to what then occurred:

"I said, 'You have forgotten what you have told me, and I am going to forget what I told you. Everything I did was conditioned on your leaving Austin and going back to McKinney. I have not written up the judgment, and I believe it is not a judgment, because you misrepresented your intentions, and I only released you for the purpose of leaving town, and you have not left town, and I don't think you intend to leave town; therefore, I am going back to where we started here. I heard your case and I found you guilty, and the evidence shows that you were guilty, and I am not going to give you a suspended sentence, and am sentencing you to serve some time in the penitentiary for your own good and for the good of the community. I believe it will be better for you to go down there than stay here and be drunk and harrass the officers of this Court under the signature of a District Judge giving you a suspended sentence for five years; and if I have anything to say about it I am going to see that you go to the penitentiary. I will change the judgment from five years to two years, because I intended to make it two years at first. I will give you the judgment that I intended to give you when you told me that you would leave town and I agreed to the suspended sentence.' "

Thereupon, the trial court sentenced relator to a term of two years in the penitentiary.

As to the entry of the suspended sentence, the record discloses that in cases such as the one here presented where the trial court concludes that the suspended sentence should be awarded, it was the custom to use a printed form so showing, which the trial court signs and attaches to the docket sheet—thereby dispensing with the necessity of copying the order on the docket sheet. Such procedure was here followed.

The order attached to the docket sheet and signed by the trial court shows that relator's punishment was fixed at five years in the penitentiary, and was suspended, in the following language:

"And it further appearing to the Court that defendant has never before been convicted of a felony in this or any other State, his Sentence is suspended during his good behavior, and defendant duly recognized in the sum of $1,000, and he is Ordered released from custody."

This order bears the signature of the trial judge.

When the trial judge revoked the suspended sentence, he changed the figure, "5," in the order to read, "2," as denoting the term to be served in the penitentiary, and drew a line through that part of the order which is above quoted. Relator was then sentenced to serve two years in the penitentiary, which term he is now serving.

The question before us narrows itself to a determination of whether the trial court suspended relator's sentence, in the first instance, under what is known as the suspended sentence law (Art. 776a, Vernon's C. C. P.).

A suspended sentence may be set aside and sentence imposed only upon a subsequent conviction for a felony or any of the offenses enumerated in Arts. 777 and 778, C. C. P.

There being no evidence that relator had been subsequently convicted of any of the offenses there named, the right to revoke the suspended sentence is not here shown if, in fact, the sentence was suspended. So the question, then, is whether this record reveals that the sentence was suspended under the suspended sentence law of this state.

The record reveals that all the requisites of the suspended sentence law were complied with—i.e., the filing of the sworn application, and the introduction of the necessary proof thereunder. Further, the trial court entered the order expressly suspending the sentence and required relator to enter into a recognizance in the sum of $1,000.

The conclusion is expressed that the relator's sentence was suspended under the suspended sentence law of this state. We do not have here a case where the trial court suspended either the imposition or the execution of sentence as authorized under the provisions of the Adult Probation and Parole Law. The requisites necessary to a suspended sentence under the suspended sentence law have no application to the Adult Probation and Parole Law. The right of parole or probation under that law is entirely at the will or wisdom of the trial judge.

The record before us does not warrant the conclusion that the trial court suspended the imposition or the execution of sentence under the Adult Probation and Parole Law (Art. 781b, Vernon's C. C. P.).

No authority existed under the suspended sentence law for the trial court to set aside that suspension because the relator did not keep his agreement to "leave town" and go to McKinney.

In cases where the imposition of sentence is suspended under the Adult Probation and Parole Law, the trial court may place limitations thereon as provided in Art. 781b, Vernon's C. C. P., but such is not true where sentence is suspended under the suspended sentence law—for, there, the suspended sentence may be revoked only by the subsequent conviction of the accused for any offense named.

From what has been said, the conclusions reached are, viz.: (a) The trial court suspended relator's sentence under the suspended sentence law. (b) Relator has not been subsequently convicted of any offense that would authorize the suspended sentence to be revoked. (c) The sentence imposed after the attempted revocation was without authority in law, and is void.

In view of the dissenting opinion herein, we call attention to the last paragraph of Sec. 34 of Art. 781b, Vernon's C. C. P., the Adult Probation and Parole Law, which reads as follows:

"However, nothing in this Act shall be construed as repeal-

ing Article 776, through 781 of Vernon's Annotated Statutes, Code of Criminal Procedure; commonly known as the Suspended Sentence Law."

By this statute the legislature expressly recognizes the two separate and distinct procedures. In our judgment, the instant case is controlled by the suspended sentence law.

Accordingly, the relief prayed for is granted and relator is ordered discharged from the custody of the penitentiary authorities under the sentence above mentioned.

The suspended sentence and relator's recognizance thereunder remain in full force and effect.

Opinion approved by the court.

GRAVES, Presiding Judge (dissenting).

The original opinion in this matter correctly sets forth the facts relative to the suspension of sentence. It is shown therefrom that the trial court finally agreed to the suspension of sentence of the relator, who was discharged, in the following language:

" 'If I do grant you a suspended sentence in this case would you go back home to McKinney, where you say you have lived and take care of your mother and father, who are in bad circumstances, and would you go at once if I ordered you released?' And he said, 'Yes, sir, that is exactly what I have in mind doing, and if released I will go home at once.' I then turned to Mr. Blackwell and said, 'Well, if he will do that I believe that might be a good solution of this case. If he will go back to McKinney and stay there as he promised me he will, I believe I will consider doing that.' "

It is the contention of the writer that that is exactly what the trial judge did under the statute which authorized the court "to suspend the imposition or the execution of sentence and may place the defendant on probation for the maximum period of the sentence imposed," etc. (Art. 781b, Vernon's C. C. P.).

Prior to 1935, it is the writer's contention that the judges of the courts had no power to suspend the imposition or execution of a sentence unless such was recommended by the verdict

of the jury. Article 776, Vernon's C.C.P.; Jones v. State, 148 Tex. Cr. R. 374, 187 S.W. (2d) 400; Brown v. State, 156 Tex. Cr. R. 602, 245 S.W. (2d) 497.

The Suspended Sentence Law passed in 1913 provides in part as follows:

"In no case shall sentence be suspended except when the proof shall show and the jury shall find in their verdict that the defendant has never before been convicted of a felony in this or in any other State." (Art. 776, supra.)

In 1935, the people passed an amendment to the State Constitution giving the judges of the courts of Texas the following power:

"Section 11A. The Courts of the State of Texas having original jurisdiction of criminal actions shall have the power, after conviction, to suspend the imposition or execution of sentence and to place the defendant upon probation and to reimpose such sentence, under such conditions as the Legislature may prescribe."

Since the passage of Art. 781b, supra, by authority of such amendment, the district judges of Texas have been exercising that power granted them by suspending the sentence in many cases and probating the defendant as their judgment might dictate, under the present statute.

It is my contention that the relator's sentence was suspended on condition and that he was probated as provided for by the statute, and the conditions of his probation were to the effect that he should return to his home in McKinney at once and assist in supporting his mother and father whom he said were in necessitous circumstances.

Section 3 of Article 781b, supra, provides for the conditions of the probation, among them being the following conditions:

(a) Commit no offense against the laws of this or any other State or the United States.

(b) Avoid injurious or vicious habits.

(c) Avoid persons or places of disreputable or harmful character.

(f) Work faithfully at suitable employment as far as possible.

(g) Remain within a specified place.

Or any other condition which the judge may see fit to impose upon him.

It is my judgment that up to the passage of Article 781b, in 1947, this article of the Constitution did not render utilizable such constitutional amendment, and no statutory enactment had been passed thereunder, but such Article 781b was passed by the 50th Legislature, Acts 1947, p. 1049, chapter 452, implementing such amendment as provided therein.

Since that time the judges have been empowered not only to grant the suspension of sentence but also to impose conditions thereunder upon the person whose sentence was thus suspended.

By virtue of our decisions thereunder, among them being Wilson v. State, 156 Tex. Cr. R. 228, 240 S.W. (2d) 774, doubtless the relator herein would have been entitled to a trial before the court alone as to whether or not he had violated any condition imposed upon him under his suspension of sentence, and he would doubtless be entitled to such trial now before the trial court that granted his suspension of sentence and attempted to revoke the same.

I think, therefore, that the cause should be sent back, or reversed and remanded to the lower court for the purpose of giving appellant the right, if he so desires, to contest the proposition as to whether or not he had violated the conditions of probation or suspension of sentence, regardless of what it might be called.

In the opinion of the writer, this is a suspension of sentence on condition as referred to in the excerpt from 15 Amer. Jur. Vol. 15, p. 140, sec. 486, reading as follows:

"If a sentence is lawfully suspended on condition, the court may revoke it on breach of the condition imposed and sentence the accused at a subsequent term," citing 33 L.R.A. (N.S.) 118, s. 39 L.R.A. (N.S.) 242; L.R.A. 1915C, 1172, and L.R.A. 1918C, 554; also Escoe v. Zerbst, 295 U.S. 490, 79 L.Ed. 1566, 55 S. Ct. 818."

In 24 Corpus Juris Secundum, p. 69, sec. 1572, it is said:

"Where the right of the court to suspend sentence indefinitely

exists, see supra, sec. 1571, and is exercised, the power remains in the court thereafter to revoke such an order and to pronounce sentence even at a subsequent term, for the reason that a suspension of sentence is not considered a final judgment by which the case is put out of court, but is a mere suspension of active proceedings in the case; but, even though such right exists, sentence cannot be pronounced after an indefinite suspension thereof if the effect would be to inflict a severer penalty than that which was permitted when the conviction was had."

On page 183 of the same volume, under section 1618, it is said:

"In granting a suspension of execution of sentence or probation, the court may impose such reasonable terms and conditions as it may deem fit, under the circumstances of the particular case. The court should be allowed a wide, but not unlimited, discretion in imposing conditions of probation. Among the conditions that have been held legal and proper, are that the one who has been granted a suspended sentence or probation, shall leave the state or country, maintain good behavior, violate no law," etc.

Further, on page 187 of the same volume, it is said:

"Except where, by statute, the power of terminating a probation and ordering the imprisonment of the probationer for a violation of his probation is vested in a state board, the court which ordered the suspension of sentence or probation has the power, on a violation of such order, to revoke the same and enforce the original judgment by commitment," etc.

It is evident that my brethren have endeavored to apply the Suspended Sentence Law as it relates to a sentence that has been suspended by a verdict of the jury. Unquestionably, until the passage of Article 781b, C.C.P., under the section of the Constitution, supra, it was necessary that a person whose sentence has been suspended should be "during the good behavior of the defendant." Section 2 of Art. 777, C.C.P., declares that "by 'good behavior' is meant that the defendant shall not be convicted of any felony, or any character or grade of the offenses of theft," etc. This statute was passed, first in 1931, and again in 1941, and had application at that time only to sentences suspended by the verdict of the jury directing such.

At that time the district judge had no power except to carry

out the mandate of the jury relative to such suspension of sentence, and a person whose sentence was suspended could only have that suspension revoked upon his failure to conduct himself properly in the observance of the "good behavior." Thereafter, the power was also given to a district judge as above set forth under the Constitution and Article 781b, supra, to suspend a sentence of his own volition without the interposition of the verdict of a jury only in pleas of guilty before him as was provided by the statute.

The revocation of the suspension by the judge herein complained of is authorized by Article 781b, supra, and carries with it the power to revoke such suspension provided the recipient of such sentence has failed to comply with the statute and the order suspending the sentence.

Undoubtedly my brethren have confused the province of the statute relating to a jury suspended sentence with the statute relating to a sentence suspended by the judge.

The testimony herein shows that the careful and prudent judge suspended the relator's sentence on the condition that he would perform certain duties thought to be incumbent upon him by the judge; that soon thereafter he violated these conditions and refused to abide by the condition under which his freedom had been extended to him by the trial court.

I think that the learned and conscientious judge was correct in his effort to enforce the judgment and conditions imposed upon the relator upon his plea of guilty to the offense charged. I, therefore, dissent from the views of my brethren in this matter and think that the relator should be remanded to the custody of the prison authorities.

### ON STATE'S MOTION FOR REHEARING.

MORRISON, Judge.

We are urged, on motion for the state, to construe the Adult Probation and Parole Law (Article 781b) as implementing the Suspended Sentence Law (Articles 776-781, Vernon's Ann. C. C. P.). That is, we are asked to merge the two laws as a unit and hold that the Adult Probation Law supplemented the Suspended Sentence Law. The state's brief and the dissenting opinion herein overlook the legislative expression of intention contained in Section 34 of the Adult Probation Law. The legis-

lature, there, stated in no uncertain terms that nothing in the Adult Probation Law should be construed as repealing the Suspended Sentence Law.

We are asked, in the face of this express mandate, as to the construction to be given the act; to say that the legislature intended to say that the Adult Probation Law shall be construed as additional powers and duties granted in connection with the already existing Suspended Sentence Law. This, we cannot do.

The state takes the position that the accused may, by the filing of an application for a suspended sentence, deprive the court of authority to employ the provisions of the Adult Probation Law. With this, we cannot agree. In fact, if a jury refused to grant a suspended sentence, the court would still, under the Adult Probation and Parole Law, have the authority in a proper case to probate the sentence. We do hold that a time of election does arise, but that election is exclusively within the province of the trial court; and, having elected to proceed under one law, the court may not change laws in the middle of the stream. This, we think, carries out the intention of the legislature when they said that each law shall stand alone, neither affecting the other.

There can be no question but that the trial court granted relator a "suspended sentence." In this connection, we observe that whenever a court employs the Adult Probation and Parole Law, it is incumbent upon him to incorporate in his order or judgment the conditions upon which the accused is paroled so that the accused and the authorities may know, with certainty, what those conditions are. We find none in the case at bar, which is further evidence to us that it was the intention of the court to follow the Suspended Sentence Law. However, we need not inquire into his intentions, for the order he made must control regardless of his intentions. Such order was for a suspension of the sentence.

We hold, here, that, having elected to grant relief under such law, he may not now look to the Adult Probation Law for powers not granted him under the law which he employed.

Remaining convinced of the soundness of our original opinion, the state's motion for rehearing is overruled.

BEAUCHAMP, Judge (Concurring).

I concur fully in the expressions and conclusions of law in Judge Morrison's opinion. I am so impressed with the reasoning of Judge Graves in his dissenting opinion that I feel a necessity that I express myself with reference to the same.

Except for the fact that he has, in my opinion, taken a wrong view of the Suspended Sentence Law and has entirely overlooked the Act of the 42nd Legislature, 1931, p. 65, ch. 43, Sec. 4 (together with the amendment of 1941) his opinion would be logical. In view of that act I think he has reached the wrong conclusion.

Prior to 1931 the matter of suspended sentence was wholly with a jury. By the act referred to an additional provision was given, from which I quote the following: "When a defendant has entered a plea of guilty and has waived his right of a trial by Jury, and has consented to be tried by the Court and there is a conviction of any felony, except * * *, and the punishment assessed by the court shall not exceed five years, the Court shall have the right and power to suspend the sentence of the defendant during his good behavior; * * *." Further provisions of the act prescribe conditions not materially different from those in the original act as found in Article 776, Vernon's Ann. C.C.P. The concluding part of the article under discussion, which is denominated Art. 776a by Vernon, provides that this act shall not be construed as repealing what is known as the Suspended Sentence Act, but is to be construed as in addition thereto.

Another section of the act as further amended in 1941 is incorporated in Article 777, Vernon's Ann. C.C.P. as follows: "1. When sentence is suspended, the judgment shall be that sentence of the judgment of conviction shall be *suspended during the good behavior of the defendant.* (Emphasis added.)

"2. By 'good behavior' is meant that the defendant shall not be convicted of any felony, or any character or grade of the offenses of theft, embezzlement, swindling, conversion, theft by bailee, or any fraudulent acquisitions of personal property. Acts 1931, 42nd Leg. p. 65, ch. 43, Sec. 4; Acts 1941, 47th Leg., p. 1334, ch. 602, Sec. 1."

It will be observed that prior to 1941 the suspended sentence could be revoked only when the party had been convicted of a felony. By the Act of 1941 there was added the provision that the the suspended sentence could be revoked when one was

convicted of theft, embezzlement, etc., even though it be a misdemeanor.

It appears, therefore, perfectly clear that the district judge has the right to suspend a sentence in a plea of guilty, such as the case now before us, and that he had such authority prior the passage of the act authorizing the judge to probate a sentence under stipulated conditions. It is further provided that he may revoke the suspension on convictions—not otherwise. To my mind, the two acts are independent. Neither one affects the other and the procedure as revealed by the record in this case was under the Suspended Sentence Law and no provision of the Probation and Parole Law is applicable under the facts testified to by the district judge describing the procedure in this case. Had he probated the sentence and prescribed the conditions, which he should make of record so that a successor in office should be able to carry out the terms, and if he had stipulated a condition covering drunkenness, his order as found in the record would be within his power. As we find the record, none of the provisions of the Probation and Parole Law have been complied with. He did not retain supervision of the party; prescribed no conditions of conduct, as prescribed in Sec. 3 of the act; and named no term for any probation as provided in Sec. 4.

I concur in the view that he had no authority to revoke the suspended sentence which he did give with all of the formalities required by law, including the recognizance entered into which is not required in the case of probation.