Richard ANDRADE, Appellant,

v.

The STATE of Texas, Appellee.

No. 69421.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 25, 1985.

Rehearing Denied Dec. 11, 1985.

---

Eric G. Brown, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., and Elaine Stone, Asst. Dist. Atty., Corpus Christi, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, Sec. 19.03(a)(3). After finding appellant guilty, the jury returned affirmative findings to the special issues under Art. 37.071(b), V.A.C.C.P. Punishment was assessed at death.

Conviction was under an indictment which charged in pertinent part that appellant in Nueces County, on or about the 20th day of March, 1984 "did then and there while in the course of attempting to commit aggravated sexual assault on the person of Cordelia Mae Guevara intentionally cause the death of Cordelia Mae Guevara by stabbing her with a knife ..."

■ In his third ground of error appellant contends the "trial court erred in imposing the death sentence because the evidence is insufficient to support the jury's answer to the second issue under Art. 37.-071, V.A.C.C.P."

In light of our holdings that the circumstances of the capital offense presented at the guilt stage can be considered by the jury, we review that evidence in evaluating appellant's contentions. See *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983), *Mitchell v. State*, 650 S.W.2d 801 (Tex.Cr. App.1983), cert. denied 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221.

■ Nueces County Medical Examiner Joseph C. Rupp went to the scene of the crime as well as performed the autopsy on the deceased. Dr. Rupp related his observations of the deceased, Cordelia Mae Guevara, upon his arrival at the La Chiquita Fajita, a lounge operated by Guevara. The deceased "had been dead for a number of hours" and "the general scene looked as though there had been a struggle." The bar appeared to have "been closing up or it was closing time when all of this occurred." The deceased "was on her back with her legs spread, her panties were not on the body, her clothing was torn, and, ... the ... legs were spread and flexed, the skirt was pulled up and torn." Tests performed during autopsy revealed a positive finding for prostatic acid phosphate in the deceased's vagina leaving "no doubt ... there was sexual activity involved in this crime."

Dr. Rupp found twelve distinct stab wounds. His findings observed "... the left lung was penetrated four times, the heart was penetrated once ... a major artery was also penetrated ... the heart was sort of penetrated twice ... and then the wound lower down here got the stomach."

Evidence at the punishment stage reflected the appellant was on parole, that there was an outstanding warrant for parole violation, that he had been convicted in Dallas County for burglary of a habitation and received "probation for that offense." While he was on probation appellant was convicted for theft by receiving in Harris County.

Sergeant R.L. Garza of the criminal investigation division of the Corpus Christi Police Department testified that appellant's reputation "for being a violent person" was bad.

Appellant presented no evidence at the guilt stage but testified in his own behalf at the punishment stage. He stated that a person at Olga's Lounge had given him something he later "found out it was heroin" and that he did not remember what happened after he went to Chiquita Fajita. The jury could have discredited appellant's lack of intent defense in light of the testimony of Juan Martinez that appellant remained at the lounge after everyone had departed except appellant and the deceased.

"In assessing punishment, the jury may consider all of the evidence adduced at trial on guilt or innocence. *Burns v. State*, 556 S.W.2d 270. The calculated nature of a defendant's criminal act and the forethought with which he coldly planned and executed the crime is probative of his propensity to commit future acts of violence. *O'Bryan v. State*, 591 S.W.2d 464. *The circumstances of the capital offense itself, if severe enough, can be sufficient to sustain an affirmative finding to the second special issue. Muniz v. State*, 573 S.W.2d 792. Reputation testimony is probative as to future acts of violence. *Ex parte Alexander*,

608 S.W.2d 928. Finally, prior criminal convictions are probative of a defendant's propensity to commit future acts of criminal violence. *Felder v. State*, 564 S.W.2d 776." *Hawkins v. State*, supra (emphasis supplied).

We find the evidence sufficient to support the jury's affirmative answer to the question of whether there is a probability that appellant would commit criminal acts of violence in the future which would constitute a continuing threat to society.

■ In his first ground of error appellant contends:

"The trial court erred in refusing to instruct the jury on the parole laws of the State of Texas during the punishment phase of the trial and in doing so denied Appellant his rights of due process under the Fourteenth Amendment to the United States Constitution and Article 1, Section 19 of the Texas Constitution and caused the imposition of the death penalty herein to violate his rights to be free of cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Article 1, Section 13 of the Texas Constitution."

After the jury began its deliberations at the punishment stage of the trial, the jury sent a note to the court which read:

"Does a life sentence include the possibility of parole? If so, after how many years?"

Appellant requested the court to give an instruction to the jury which included, "You are instructed that a person convicted of Capital Murder is not eligible for parole until he has served at least twenty calendar years...."

The court denied appellant's requested instruction. Appellant urges that if the Texas scheme of capital punishment is to be valid, the jury must fully know what alternatives are available short of the death penalty.

Noting the difference in the death penalty from "all other sanctions in kind rather than degree" appellant argues the procedure must guide and focus the jury's objec-

tive consideration of the particular circumstances to pass muster under *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Appellant reasons, "unless the jury is fully informed of the parole laws ... they cannot make an objective decision considering the alternative of life imprisonment because they are left to speculate as to the effect of their answer."

In *Williams v. State*, 668 S.W.2d 692 (Tex.Cr.App.1983) this Court was faced with an almost identical argument in an appeal from a capital murder conviction where the death penalty had been assessed. In *Williams*, we found no merit in appellant's contention that the trial court had erred in charging the jury at the punishment stage that it was not to consider how long the defendant would be required to serve to satisfy a sentence of life imprisonment. We still perceive no merit in this argument and reject appellant's contention. See also *Freeman v. State*, 556 S.W.2d 287 (Tex.Cr.App.1977).

■ Appellant next contends:

"The trial court erred in admitting into evidence the opinion of an expert witness who was not present at trial and in doing so denied Appellant his rights to confront and cross-examine the witnesses against him in violation of Article 1, Section 10 of the Texas Constitution and the Sixth and Fourteenth Amendments of the United States Constitution."

A shirt identified by witnesses as the one appellant was wearing the night in question was found at the scene of the crime. Special Agent Eubanks of the Federal Bureau of Investigation testified that the blood on the shirt had the same characteristics as the blood of the deceased. The portion of his testimony which gives rise to appellant's complaint concerned Eubanks' testimony that another agent had determined that there were no chemical differences between ink on the shirt and the ink in a broken pen belonging to the victim found at the scene of the murder. The testimony regarding the lack of difference in the ink was admitted over appellant's objection.

We find it unnecessary to reach the question raised by appellant's contention. Appellant testified at the punishment stage of the trial. While admitting that he was at La Chiquita Fajita on the night of the crime, appellant stated he had no memory of the crime. Under cross-examination appellant admitted that the shirt in question was his and he had worn same the night of the crime.

In addition to appellant's admission, other evidence connecting appellant and the deceased to the crime scene came from a comparison of appellant's hair and hair found on the shirt. Two witnesses testified that appellant wore the shirt to the scene of the crime on the night in question. Other testimony matched head and pubic hair of the deceased to hair found on the shirt. Blood on the shirt was shown to have the same characteristics as the blood of the deceased. In light of the foregoing testimony, we fail to perceive how testimony concerning the ink analysis harmed appellant.

In his fourth ground of error appellant contends "the trial court abused its discretion by not declaring a mistrial or entering a life sentence at the punishment phase of the trial after the jury indicated they were deadlocked on the punishment questions."

The jury began its deliberations on the punishment issue at noon on November 8, 1984. At 4:32 p.m. on that same date, the jury notified the court in a note that they could not agree on the answer to the first issue, the vote standing "ten votes yes and two votes no." Appellant requested that the court discharge the jury and enter a life sentence in accordance with Art. 37.-071, V.A.C.C.P.[1] The court overruled appellant's motion and instructed the jury to continue its deliberations. At 7:30 p.m., in response to the court's question "... do

---

1. Art. 37.071(e), V.A.C.C.P. provides in pertinent part, "If the jury returns a negative finding or is unable to answer any issue submitted under this article, the court shall sentence the defendant to confinement in the Texas Department of Corrections for life."

you think you are making any progress ...?", the jury foreman responded "very little, but possibly" and replied "It's possible" to the question, "Do you think there is any hope of your reaching a verdict?" After following the court's suggestion that they take a brief recess the jury resumed its deliberations, and at 10:00 p.m. the jury by way of a note to the court advised they were "making progress with question # 1 and ... reached a unanimous decision to question # 2." The jury requested permission to retire for the night and did close deliberations at 11:00 p.m. Deliberations resumed at 9:00 a.m. the following day and a verdict was reached at 9:27 a.m.

Art. 36.31, V.A.C.C.P. provides:

"After the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to the discharge; or the court may in its discretion discharge it where it has been kept together for such time as to render it altogether improbable that it can agree."

Appellant points to the fact that presentation of evidence at the guilt stage took approximately two days and consumed slightly over an hour for the punishment phase. Appellant urges in view of the short length of time for the testimony and the long hours of deliberation by the jury in this case, it was an abuse of discretion to keep the jury together for such a length of time.

Length of time that the jury may be held for deliberation rests largely in the discretion of the court, and unless it is made to appear that the court abused its discretion in that regard, no reversible error is shown. *Garcia v. State,* 522 S.W.2d 203 (Tex.Cr.App.1975).

Considering the nature of the case, a capital murder, and the time of deliberation, approximately twelve hours, we find no abuse of discretion on the part of the trial court. *Jones v. State,* 148 Tex.Cr.R. 374, 187 S.W.2d 400 (Tex.Cr.App.1945). No error is shown.

In his last ground of error appellant contends the court erred in failing to grant appellant's motion to quash.

The indictment, in pertinent part, alleged that appellant:

"did then and there while in the course of attempting to commit aggravated sexual assault on the person of Cordelia Mae Guevara intentionally cause the death of Cordelia Mae Guevara by stabbing her with a knife ..."

Appellant's timely filed motion to quash complained of the failure of the indictment to "allege the acts the Appellant allegedly committed that amounted to more than mere preparation and also failed to allege facts or the specific intent to commit an offense alleging an attempted aggravated sexual assault."

The allegation of the constituent elements of the offense constituting the aggravating feature of a capital murder charge is unnecessary. *Hammett v. State,* 578 S.W.2d 699 (Tex.Cr.App.1979); *Smith v. State,* 540 S.W.2d 693 (Tex.Cr.App.1976), cert. denied, 430 U.S. 922, 97 S.Ct. 1341, 51 L.Ed.2d 601 (1977). This is true even in the face of a motion to quash. *Hammett v. State,* supra. No error is shown.

The judgment is affirmed.

TEAGUE, Judge, CONCURRING.

I write only to address appellant's first ground of error, which asserts: "The trial court erred in refusing to instruct the jury on the parole laws of the State of Texas during the punishment phase of the trial and in doing so denied Appellant his rights of due process under the Fourteenth Amendment to the United States Constitution and Article 1, Section 19 of the Texas Constitution, and caused the imposition of the death penalty herein to violate his rights to be free of cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Article 1, Section 13 of the Texas Constitution."

In his argument under this ground of error, appellant claims that the trial court's failure to instruct the jury on the law of

parole for a life sentence caused the imposition of the death penalty to violate the Eighth and Fourteenth Amendments to the United States Constitution. He also argues that the trial court's action in keeping this information from the jury deprived the jury of all the possibilities it might have considered.

Appellant's contention has always been rejected by this Court. The majority correctly holds his contention is without merit. Also see *O'Bryan v. State*, 591 S.W.2d 464, 478 (Tex.Cr.App.1979).

Had Texas statutory law provided for such an instruction, neither the Eighth nor the Fourteenth Amendments to the Federal Constitution would prohibit such an instruction. See *California v. Davis*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), in which the Supreme Court upheld a California statute on Federal Constitutional grounds. The statute required the trial judge to instruct the jury in the following language:

> You are instructed that under the State Constitution a Governor is empowered to grant a reprieve, pardon, or commutation of a sentence following conviction of a crime. Under this power a Governor may in the future commute or modify a sentence of life imprisonment without possibility of parole to a lesser sentence that would include the possibility of parole.

For the reasons expressed by Justice Marshall in the dissenting opinion that he filed in *California v. Ramos*, supra, if Texas statutory law required such an instruction, I would vote to declare it unconstitutional under the Texas Constitution because such an instruction invites the jury to consider factors that are foreign to its task of deciding what answers the questions that are submitted to it pursuant to Art. 37.071, V.A.C.C.P., call for. In fact, advising jurors that a life penalty is theoretically modifiable, and thus not "final," might incline them to approach their fact finding duty with less appreciation for the gravity of the answers to the submitted questions and for the moral responsibility reposed in

them as fact finders. In short, such an instruction disclosing the Governor's power to commute a life sentence might operate to a defendant's severe disadvantage and to his extreme prejudice. E.g., *People v. Morse*, 60 Cal.2d 631, 36 Cal.Rptr. 201, 388 P.2d 33 (Cal.Sup.Ct.1964).

Therefore, I believe that had the trial court granted appellant's requested instruction it would have tended to reduce the jury's sense of responsibility in answering the submitted questions.

Furthermore, but as pointed out by Justice Marshall in the dissenting opinion that he filed in *California v. Ramos*, supra, such an instruction might have misled the jury about the scope of either the Parole Board's powers or the scope of the Governor's clemency power, and could have very well led the jury into believing that it could have eliminated any possibility of commutation by answering in the affirmative all of the questions submitted to it. Such an instruction also would have invited speculation; speculation about the possibility of release. It also would have invited the jury to predict the actions of the present or some future Parole Board or Governor of this State. It is or should now be axiomatic that individual jury predictions on the possibility of parole represent nothing more than "sheer speculation." A jury simply has no basis for assessing the likelihood that a particular defendant will eventually be released on parole if he is not sentenced to death. To invite any jury to indulge in such speculation is to ask it to foretell numerous imponderables, in particular, the policies that may be adopted by the present and unnamed future governors and parole officials. Lastly, such an instruction would inject into the capital sentencing process a factor that bears no relationship to the nature of the offense or the character of the offender.

In conclusion, but as Justice Marshall also pointed out in the dissenting opinion that he filed in *California v. Ramos*, supra: "The conclusion that juries should not be permitted to consider commutation and parole in deciding the appropriate sentence

is shared by nearly every jurisdiction which has considered the question... Whatever interest a State may have in imposing the death penalty, there is no justification for a misleading instruction obviously calculated to increase the likelihood of a death sentence by inviting the jury to speculate about the possibility that the defendant will eventually be released if he [in this instance, is given a life sentence] and not executed."

The majority correctly overrules appellant's first ground of error.

Because it did not become effective until September 1, 1985, it is not necessary to discuss at this time what application, if any, Senate Bill 37, see 69th Leg., 1985 Tex.Sess. Law Serv. 4446 (Vernon), which will provide statutory instructions to the jury on parole and good time laws, might have on appellant's contention.

With these additional remarks, I agree with what the majority opinion has stated and held in disposing of appellant's other contentions.