IN RE ESTATE OF OSBORN.

C. N. OSBORN et al., Appellees, v. JOSEPHINE WHITLOW, Appellant.

**WILLS:** Requisites and Validity—Execution—Proof. Proof that a deceased subscribing witness to a will actually signed the will as a witness, plus testimony ·by the surviving subscribing witness that, while he had no distinct and independent recollection of having signed the will as a witness, yet he knows he would not have signed if the testator had not signed, presents prima-facie evidence of the due execution of the will.

**WITNESSES:** Credibility, Impeachment, Etc.—Conviction of Misdemeanor. A witness may not be cross-examined as to his former conviction of the crime of having unlawfully obstructed the course of public justice,—a misdemeanor,—because:

1. Such offense is not a felony, as provided by Code Section 4613, and

2. Such examination would expose the witness to public ignominy, in violation of Section 4612, Code Supp., 1913.

**BASTARDS:** Paternity—Declarations of Putative Father. The reception, without objection, in a will contest, of declarations of a testator at the time of executing his will, to the effect that he had doubts whether he was the father of one who was ignored in the will, presents no issue on the paternity of such person, when such paternity was, at the trial in question, fully conceded.

**TRIAL:** Reception of Evidence—Objectionable Document Admissible for One Purpose. The reception in evidence of an instrument which is very largely irrelevant, and which, preferably, ought to have been kept out of ·the record, is not error, when such instrument did have some small bearing on one of the issues, and was specifically so limited by the court, and especially when complainant first prominently injected the document into the testimony, but without offer of its introduction.

**NEW TRIAL:** Misconduct of Court—Re-reading Instructions. It is not misconduct for the court, after long deliberation of the jury, to re-read his instructions, and that, too, with such emphasis and intonations of voice as he may think necessary in order to convey understanding.

**TRIAL:** Verdict—Impeachment. A verdict may not be impeached by the testimony of a juror to the effect that he yielded to mere weariness or weight of numbers.

**WILLS:** Testamentary Capacity—Evidence. A record without some substantial evidence of testamentary incapacity *at the time the will was executed* will not support a verdict overthrowing the will.

*Appeal from Madison District Court.*—L. N. HAYS, Judge.

JUNE 24, 1918.

REHEARING DENIED MAY 6, 1919.

THIS is a will contest. The contestant is the daughter of the deceased. There was a verdict sustaining the will, and the contestant has appealed.—*Affirmed.*

*Robbins & Smith,* for appellant.

*A. W. Wilkinson, Jno. A. Guiher,* and *J. P. Steele,* for appellees.

EVANS, J.—The testator is known in the record as Dal Osborn. The contest was based upon alleged mental incompetency and undue influence. No evidence was offered, however, on the question of undue influence, and such issue was not submitted to the jury. The testator died, July 29, 1915. The will was executed on July 26, 1911, and on its face appears to be executed in due form. The testator was married to the contestant's mother on March 23, 1881. A few days thereafter, the contestant was born, in lawful wedlock. At the time of the testator's marriage, both civil and criminal proceedings were pending against him, wherein he was charged with the paternity of the unborn child. After the marriage, the parties lived together for several months as husband and wife. In November following, the wife left the testator, together with her child. In 1884, the testator obtained a divorce from his wife, on the ground of desertion. No question is made of the paternity or of the legitimacy of the contestant as the child of the testator, though the circumstances of the marriage and separation were allowed consideration, as bearing upon the naturalness and reasonableness of the will.

The record does not disclose the age of the testator. It is undisputed that, in the year 1913, the testator met with a severe accident, and that, about July, 1914, he had a stroke of apoplexy, and that he died in July, 1915. Immediately after July, 1914, a guardian was appointed for him, who continued as such until his death. It is without controversy that, from and after July, 1914, the testator was mentally incompetent.

I. The appellant's first contention is that the will was not sufficiently proved by the witnesses thereto. It appeared regular upon its face. The purported witnesses thereto were Dr. Embree and R. L. Huston.

1. WILLS: requisites and validity: execution: proof. Huston had died before the presentation of the will for probate. His signature was proved by the opinion of a witness familiar therewith. Dr. Embree also testified:

"R. L. Huston signed at the time I signed it. We signed as witnesses, at the request of this man Osborn."

The objection of the contestant to the proof of the will is based upon the cross-examination of this witness, whose actual recollection of the event was confessedly slight. He testified, on cross-examination:

"I have a slight recollection, but not very much. Q. As I understand you, one reason you know G. M. D. Osborn signed this is that you would not have signed as a witness unless he did? A. That is the best reason. Q. And you have no recollection of seeing him sign that on the bottom of that first page? A. I know this: I would not have signed it unless he did. Q. Read the question. (Question read.) A. To the best of my knowledge and belief, he did. Q. I am inquiring whether you have an independent recollection of seeing him sign it. A. I recollect that Huston signed it; I would not have signed it if they hadn't both signed. Q. That is the only reason you say you know Osborn signed it? A. That is the best one,

and that is a good one. * * * Q. Were these two sheets fastened together at the time you signed it? A. I ain't going to say that. Q. You don't know? A. I don't remember."

The objection made to the will, and now pressed upon our attention, was that its execution had not been "proved by two competent witnesses, as provided by the statute." The evidence was sufficient at least to go to the jury. No complaint is made of any instruction to the jury on the subject.

II. One of the witnesses for the proponent was confronted, when cross-examined, with an indictment which had been found against him some 20 years ago, and with his written plea of guilty thereto. The charge in that indictment was that of unlawfully obstructing the course of justice by spiriting away a witness. Over objection, the witness was interrogated, on cross-examination, concerning the indictment and the plea, both of which were identified and offered in evidence. The trial court ruled out such cross-examination as "improper and incompetent." Complaint is now urged against such ruling. Counsel for appellant state the point in their brief as follows:

2. WITNESSES: credibility, impeachment, etc.: conviction of misdemeanor.

"The court excluded the testimony, doubtless, upon the theory that the crime charged in the indictment was not felony, and hence the matter did not fall within the provisions of 4613 of the Code, which authorizes the interrogation of a witness as to his previous conviction for a felony. The right to the introduction of the testimony was not claimed under this section, but is claimed on the theory that the crime charged in the indictment, Exhibit 7, was an infamous one, even though not a felony; and hence the matter would be governed by the provisions of 4602 of the Code, rather than by 4613 of the Code."

If counsel had made the point in the lower court as they have made it here, they would be in a better position to ask review of the ruling. It is undoubtedly true that the ruling of the court was predicated upon the provisions of Section 4613 of the Code. There was no suggestion to that court that the offer was made in pursuance of the provisions of Section 4602 of the Code. This section of our statute has been rendered a quiescent one. If any evidence has ever been received exclusively pursuant thereto in any case, it does not appear in the annotations. The only case where its provisions appear to have been considered is *Palmer v. Cedar Rapids & M. R. Co.*, 113 Iowa 442. In that case, the evidence was held properly rejected. The offer of the evidence by contestant could have been construed as pursuant to Section 4613. So construed, the ruling was right. In view of that fact, it was incumbent upon the contestant to be more specific in its disclosure of purpose to the lower court. If the ruling were erroneous, therefore, we should incline to hold that the error was not available to the appellant. But we think that the propriety of the cross-examination was governed by Section 4612, Code Supplement, 1913, which protected the witness against any cross-examination which would tend "to expose him to public ignominy * * * except as provided in the next section [4613]."

Section 4613 is:

"A witness may be interrogated as to his previous conviction for a felony. But no other proof is competent, except the record thereof."

Section 4602 provides:

"Facts which have heretofore caused the exclusion of testimony may still be shown for the purpose of lessening its credibility."

The indictment identified and offered was for a misdemeanor, and not for a felony. But appellant contends

that the misdemeanor was an infamous offense at common law, conviction for which rendered the witness incompetent to testify at all; and that, though such incompetency has been removed under our statute, the purpose of Section 4602 is to allow the fact to be shown, to lessen the credibility of the witness. Assuming this view, without now passing upon it, Section 4602 does not, in terms, permit such fact to be shown by an examination of the convicted person. Section 4612 expressly forbids such examination, except as permitted by Section 4613. The permission of Section 4613 applies only to convictions for felony. There is authority for holding that conviction for an infamous offense, though not a felony, may be shown by cross-examination of the convicted person. But the question is foreclosed by our statute, and we are not free to look for judicial authority thereon. The ruling was not error.

III. The contestant offered testimony of conversations with the testator many years ago, wherein he, in effect, acknowledged the paternity of the contestant. Objection to these offers was sustained. Complaint is

3. BASTARDS: paternity: declarations of putative father.

made thereof. The reason urged for the admissibility of this evidence is that Cooper, the attorney who drew the will, testified to certain statements made to him by the testator at the time the will was formulated. These were to the effect that he doubted the paternity of the child, and that his wife had made a written confession to him, implicating another as the father; that he had a copy of such confession at home, and had given the orginal to his then attorney, Wilkinson. This evidence was introduced without objection. After full cross-examination of the witness on the subject, counsel for contestant moved to strike all the testimony on that subject. This motion was overruled, with a statement by the court that it could be considered as bearing only upon the

testator's recollection of his family, and as to the reason
he had, if any, for the disposition that he did make. We do
not think that this testimony opened up any issue as to
the paternity of the contestant, or as to whether the testa-
tor had ever acknowledged the paternity. She was born
in lawful wedlock. She was conclusively presumed to be the
child of the testator. This fact was expressly conceded up-
on the trial, and the jury was expressly instructed thereon.
Whether any of this evidence on behalf of proponent was
objectionable, we have no occasion to determine. It went
in without objection.

IV. Complaint is made of the introduction in evidence
of a certain Exhibit L. This was a purported copy of a
purported confession by the wife of the testator concerning
the paternity of her child. The contestant
caused the paper to be produced by one of
her own witnesses. The testimony of
Cooper as to what the testator had said
about a confession appears to have been
challenged by contestant, by calling to the
witness stand Wilkinson, who was acting as attorney for
the proponent, and by interrogating him concerning such
original. It was proved by him that he had no recollection
of ever receiving such original. Thereupon, D. A. Osborn,
one of the beneficiaries under the will, was called as wit-
ness, and he was interrogated concerning a search among
the papers of the testator. The result of the examination of
this witness was the producing of the paper, Exhibit L, and
the contestant rested. On cross-examination, the propo-
nents offered the exhibit in evidence. The first objection
thereto by counsel for contestant was:

"I don't know whether I want to object to it or not,
—I will see. The Court: Take your time. Look it over."

Thereupon, objection was made that it was not proper

4. TRIAL: re-
ception of evi-
dence: objec-
tionable docu-
ment admissi-
ble for one
purpose.

cross-examination, and is not a copy of the paper inquired about of the witness; also, that there is no showing of the loss of the original, of which the paper purports to be a copy. Thereupon, the court stated that it would admit the paper for a limited purpose only, which should be stated in the instructions. In the instructions, the jury was expressly admonished that the paper was not to be considered as tending to show that the contestant was not, in fact, the legitimate child of the testator, and that it was to be considered only as indicating a reason, if any, operating upon the mind of the testator. It is complained in argument that no basis was laid for the introduction of the copy, by showing a loss of the original. Such rule is not involved. The paper was not introduced in evidence as proof of any statement contained therein. It was the paper, and not its recitals, that was introduced. It was introduced as the paper that had been in the possession of the testator. Its existence among his papers was consistent with the alleged statement made by him to his attorney that he had a copy of his wife's confession. It is true that there was very little reason for introducing it in evidence at all, but the contestant had brought it into the case with some display, and is not in a position to complain. While the court might well, and perhaps would better, have held that the evidence along that line had proceeded far enough, without receiving the paper itself in evidence, it was not reversible error to receive it for the limited purpose for which it was received. There was very little reason for the contestant's pursuing the subject to the extent which she did. Such explorations are always attended with some degree of danger to the explorer.

V. Upon motion for new trial, complaint was laid of misconduct of the jury in their deliberations, and of erroneous conduct of the trial judge in connection with such

deliberations. The facts pertaining to the
alleged misconduct are involved in some con-
flict. The finding of the court was against
the appellant. There was a showing that
the jury retired, in charge of a bailiff, on
Saturday; that they deliberated until 10:30, without reach-
ing a verdict; that the bailiff then conducted them to their
beds, which had been provided for them on another floor of
the courthouse; that they arose late on Sunday morning,
some of the jurors contending that they could not deliber-
ate on Sunday; that they did not at first resume their
deliberations; that one or more of them bought a Sunday
newspaper, and that some of them engaged in games; that,
at 10:30, the judge appeared at the door of the jury room,
and stated to the foreman that they were empowered to
carry on their deliberations on Sunday; that some of the
jurors read a newspaper item about a case which had been
appealed to the Supreme Court, wherein the mental compe-
tency of a party to a contract had been called in question,
and had been sustained in the lower court; that, at 4 P. M.,
the trial judge called at the door of the jury room again,
and asked the foreman if they had agreed upon their ver-
dict; that the foreman replied that they had about agreed
to disagree; that the judge said he could not receive such
a verdict; that he said, jokingly, that court would be in
session through the week; that, at the time of these oc-
currences, the jury stood eleven to one; that, at 5 P. M.,
the jury was called into the court room, the attorneys for
both sides being present, and the instructions were by the
court re-read to the jury. They were thereupon sent out
for further deliberation. One hour later, a verdict was re-
turned. The outstanding juryman was Gray. The claim
of misconduct was based upon his affidavit. It is claimed
that undue pressure was brought to bear, to induce him to

5. NEW TRIAL:
   misconduct of
   court: re-
   reading in-
   structions.

agree to the verdict; that the judge read the instructions with an emphasis that was not apparent at the first reading; and that such emphasis gave prominence to those instructions which were said to be favorable to the proponents.

It was not error for the judge to re-read the instructions. Questions of emphasis and intonation are quite beyond our reach. It may safely be said that no two judges read their instructions alike. Some read them badly, and some well. Good reading requires some intelligent emphasis.

Juror Gray testified:

"Aside from the matter of emphasis, he read the instructions a little slower than he did the first time. I could hear him a little plainer. During the second reading, he looked at the jury, and I believe he said if anyone had any particular point that he wanted light on, to make it known."

It is manifestly important that the jurors should understand the instructions. It is evident, also, that to read them slowly and plainly, and with the appropriate emphasis, would conduce to that end. There is no error apparent at this point.

On the question of misconduct, we have frequently held that a new trial will not be granted for misconduct of the jury, unless prejudice appear. *Carbon v. City of Ottumwa*, 95 Iowa 524; *Bowman v. Western Fur Mfg. Co.*, 96 Iowa 188; *Hathaway v. Burlington, C. R. & N. R. Co.*, 97 Iowa 747. The principal prejudice put forward in this case is the influence upon the juror Gray. This juror testified, however, in support of the motion as follows:

6. Trial: verdict: impeachment.

"Well, after we retired to the jury room, they said, 'Mr. Gray, what about it now?' and I says, 'I am more firmly

convinced than ever I am in the right.' I was getting pretty well worn out, and they says, 'That will settle it;' and I says, 'The only proposition that I will vote with you on is with the understanding I am voting against my sentiments, just simply to get the case off my hands.' "

This testimony would indicate that the juror was in no manner misled or convinced to change his position by anything that was done. On the other hand, the claim of the juror that he yielded to mere weariness or weight of numbers is only an impeachment of the verdict and of the juror himself, and is not permissible.

VI. We have assumed, up to this point, that the evidence for the contestant was sufficient to have sustained a verdict in her favor, if one had been rendered. We think it must be said, however, that we do not find in the record any evidence to sustain a finding for the contestant, if one had been had. Appellant does not profess to have abstracted all her testimony. She has abstracted more than 50 pages thereof. In addition thereto, she has stated therein that other witnesses testified to facts tending to show the mental incompetency of the testator at the time of the making of the will. This statement is appropriately denied by the appellees, and an amended abstract has been filed. The volume of the evidence is not important for our consideration; but it is essential that it should appear here that there was some evidence of the testator's mental incompetency at the time of making the will. Many witnesses appear to have testified for the contestant, and to have testified to transactions with the testator. Some of these fix the time on and after July, 1914. Some of them fix no time whatever; others fix an earlier and appropriate time. As to these latter, we find none who have testified to any transaction having any significance as tending to show mental incompetency. We think it was incumbent upon the con-

7. WILLS: testamentary capacity: evidence.

testant to produce evidence of conduct or condition ante-
dating the stroke of apoplexy, and perhaps the previous ac-
cident, before a finding of mental incompetency in July,
1911, could be said to have support.  Some witnesses testi-
fied to their opinion that he was mentally incompetent on
such date, but they adduced no facts upon which such opin-
ion could be legally based.

It is manifest, therefore, that, even if we were to find
error in this record, we should have to deem it error with-
out prejudice.  No useful purpose can be subserved by a
further discussion of specific errors assigned.  Sufficient to
say that we find no reversible error.—*Affirmed*.

PRESTON, C. J., LADD and SALINGER, JJ., concur.