**STATE of Iowa, Appellee,**

v.

**Fred ALBERS, Appellant.**

**No. 53034.**

Supreme Court of Iowa.

Feb. 10, 1970.

R. L. Donohue, West Union, and Frank R. Miller, Decorah, for appellant.

Richard C. Turner, Atty. Gen., James C. Sell, Asst. Atty. Gen., and William L. Wegman, Chickasaw County Atty., for appellee.

BECKER, Justice.

Fred Albers was indicted for the crime of murder in the first degree in violation of section 690.1, 1966 Code of Iowa. He pleaded not guilty claiming his wife was killed accidentally. A Chickasaw County jury found him guilty of the included offense of second degree murder. He appealed from the court's judgment sentencing him to twenty years in the state penitentiary at Fort Madison and assigns ten grounds for reversal.

I. Defendant claims the trial court abused its discretion in failing to grant a change of venue. The shooting incident occurred February 4, 1967. On September 15 the case was assigned for trial November 13, 1967. November 6, defendant filed a motion for change of venue alleging 28 out of 80 or about 35% of the jurors on the panel resided in close proximity to defendant's residence and it would be difficult to obtain a fair and impartial jury as his wife had lived on this farm all her life, taught school in Nashua and was well known in that part of Chickasaw County which received mail through Nashua or Ionia post offices. He also claimed radio and press coverage of the incident created excitement and prejudice against him. Attached to the motion were the affidavit of his attorney and those of six other affiants swearing each "was of the opinion that due to the feeling and prejudice existing in Chickasaw County, Iowa against Fred Albers that he would not be able to obtain a fair and impartial trial on the charge of murder filed against him".

The State's resistance was accompanied by 25 affidavits identical in form, except as to the names of the affiants, their residence, occupation, and the length of time they had resided in the county. Each stated he had occasion to converse with and see many people in the course of his occupation and he was unaware of any general excitement or prejudice in the county regarding the case.

The movant has the burden of showing the trial court abused its sound discretion in overruling the motion for change of venue. State v. Loney (1968), Iowa, 163 N.W.2d 378, 383 and citations. Section 778.9, Code of 1966. We are unable to say the court abused its discretion here.

The newspaper stories and the television and radio broadcasts were no more than short concise reports of the incident and the actions taken by the State. They appeared about 8 months before trial. They

contained no inflammatory statements or opinions. It is true they didn't state defendant claimed the shooting was accidental, but there was no attempt to recite any details of the incident.

The radio and newspaper publicized the fact that the county attorney would seek a first degree murder indictment. In one edition a story headed by the statement "Wegman to Crack Down on Crime" was directy above a story headed "Albers, Nashua Farmer, Posts $10,000 Bond". The publicity here was nothing more than ordinary reporting which always accompanies an event such as this.

There was no doubt prejudice and excitement in the Nashua-Ionia area, but as we will discuss more in detail later there was little difficulty picking a jury from the other parts of the county which exhibited little knowledge of and no excitement or prejudice about the case. All jurors challenged for cause were excused.

■ Defendant claims the affidavits filed by the State were not sufficient as they do not state he could obtain a fair and impartial trial in Chickasaw County. We do not agree. They go to the basic question of excitement or prejudice. They may have been so drawn to avoid the criticism leveled at counter affidavits filed in State ex rel. Fletcher v. District Court (1931), 213 Iowa 822, 833, 238 N.W. 290, 295, 80 A.L.R. 339. We said: "The purpose of the affidavits in the form presented evidently was not to dispute the factual assertions in the state's application but to qualify the affiants to give and set forth their opinions that the prejudice and excitement would not preclude a fair and impartial trial." The affidavits here deny knowledge of the existence of any prejudice or excitement. They do not express an opinion as to the effect of existing prejudice or excitement. If none exists there is no reason why defendant could not receive a fair and impartial trial.

■ Defendant also claims the fact the whole jury panel was exposed to the examination and excuse of 18 jurors for cause on voir dire must have affected them and made it impossible for defendant to obtain a fair and impartial trial from those who previously had no opinion. There is merit in the American Bar Standard, 54 A.B.A. Journal 349, that under some circumstances each juror should be examined out of the presence of the other jurors, this has never been the practice in Iowa but the defendant cannot claim prejudice as an afterthought when he made no effort at the time to segregate the jurors under examination.

The record here is not as strong as that made in State ex rel. Fletcher v. District Court (1931), 213 Iowa 822, 238 N.W. 290, 80 A.L.R. 339; State v. Meyer (1917), 181 Iowa 440, 448, 164 N.W. 794; State v. Crafton (1893), 89 Iowa 109, 115–116, 56 N.W. 257, and State v. Canada (1878), 48 Iowa 448, 451, in which we held the trial court abused its discretion in not granting a change of venue. While a change of venue might well have been granted, we hold the trial court did not abuse its discretion in failing to grant the change. State v. Loney (1968), (Iowa), 163 N.W. 2d 378, 382–383; State v. Ferguson (1957), 249 Iowa 361, 364, 86 N.W.2d 901, 904.

II. As a ground for new trial defendant argues the trial court abused its discretion by requiring the jury to continue its deliberations until 4:30 a. m. thus depriving defendant of a fair and impartial trial.

After a nine day trial, the jury was excused for Thanksgiving Day. They reported back at 10:00 a. m. Friday, November 24, to hear arguments and to receive the court's instructions. They retired to the jury room to deliberate at 5:30 p. m. An ample meal was provided at about 6:00 p. m. Around midnight the jury was given their choice of several varieties of sandwiches and drinks. Twice during the night the bailiff was instructed to clear the courtroom and permit the jury to walk around. About 2:00 a. m., while defendant's attorney was in the judge's chamber,

the jury asked the bailiff to report to the judge. Defendant's counsel recalled the bailiff reported they were hopelessly deadlocked. The court remembered that the bailiff said one or more of the jurors inquired how long they were supposed to deliberate on a verdict.

At this time the court and defendant's counsel considered the advisability of giving a verdict urging instruction and agreed it should not be given. In his ruling the trial court stated: "Counsel for defendant at that time, appeared willing to let the jury continue its deliberations without further instructions. At no time during the night, was the court urged to provide lodging for the jurors and permit them to retire for the night. Accommodations for them would have been difficult if not impossible to find."

Defense counsel states in his affidavit that the trial court informed the bailiff there was nothing the court could do and that the jury must continue their deliberations. The trial court states his answer to the bailiff was that there was no specific time limit.

In Kracht v. Hoeppner, 258 Iowa 912, 917, 918, 140 N.W.2d 913, 916, we said: "We find no valid reason to require a jury to deliberate all night. If the attorneys are unwilling to agree the jurors be released under proper admonition until the next morning the jury should be furnished proper sleeping quarters as authorized by rule 202, Rules of Civil Procedure which provides: 'Food and Lodging. The court may order the sheriff to provide suitable food and lodging at the expense of the county for a jury being kept together to try or deliberate on a cause.'" This case was cited with approval in both State v. Kittelson (Iowa), 164 N.W.2d 157, 167 and Gibbs v. Wilmeth (Iowa), 157 N.W.2d 93, 100. The point was not determinative in either case.

■ The local practice of failure to provide for jury lodging does not vitiate the error. In State v. Green, 254 Iowa 1379,

121 N.W.2d 89, 95 A.L.R. 810, we noted: "In its order overruling the motion for new trial the court gave two reasons for not providing for lodging for the jury. The first was that it had 'never been the practice in said judicial district to separate the jury after final submission, and lodging has not been furnished jurors after commencement of their deliberations.' The custom in any district does not control the matter of what procedure would be the best as to the deliberations of a jury. * * *."

■ This was a murder case; it had been tried for nine days; it involved a very difficult decision for the 12 jurors. One could reasonably anticipate these people would not, and perhaps could not, reach a verdict at a reasonable hour after the 4:30 p. m. submission time. Therefore the court had a duty to anticipate the possible need and provide for lodging as it did for meals. Lodging may well have been unattainable at 2:00 a. m. when the jury made inquiry. It is not shown accommodations could not be provided with forethought before the preceding trial day started. In this era of rapid transportation and availability of motels as well as hotels it is inconceivable that the State could not arrange a night or two lodging for 12 people.

In State v. Siegel, 221 Iowa 429, 264 N.W. 613, the jury deliberated 90 hours before reaching an agreement, but the opinion does not show such deliberation to have been without sleep. We so noted in State v. Green, supra, and added: "The criterion is not the number of hours which a jury uses in deliberation, but the conditions under which such deliberation takes place."

The distinction made in State v. Green, supra, is that the total length of jury deliberation is one judgment to be made by the trial judge and the length of deliberation without normal time to sleep and rest is quite another matter. Both judgments have been held to be within the sound discretion of the trial court.

This distinction is meaningfully discussed by the Nebraska Supreme Court in a case where the jury deliberated six days, Jahnke v. State (1903), 68 Neb. 154, 94 N. W. 158, 167–168: "The thought is suggested that the conclusion reached may possibly have resulted from weariness, exhaustion, and the overcoming of opposition and differences of opinion by force of numbers, and sheer physical and mental inability of a few to withstand the arguments and importunities of a majority of the jurors for such a long period of time. If such were true, then the action taken results in a species of coercion rather than free action and voluntary agreement on a verdict by each individual juror. Such a condition could not be tolerated, and, if made to appear, would vitiate a verdict returned under such circumstances. On the contrary, if the jury were provided with suitable quarters, were able to sleep when nature required it, and were laboring under such surroundings and circumstances as permitted them to proceed leisurely and comfortably in their deliberations, and did in fact deliberate among themselves in an effort to agree until a final verdict was reached, which was the result of a free and voluntary action on the part of all the jurors, the verdict could not be successfully attacked as being the result of coercion or undue restriction of freedom of action on the part of each and every individual juror composing the panel. The time which jurors shall be kept together before they are finally discharged because of inability to agree on a verdict rests largely in the discretion of the trial court; but this is a legal discretion, and, if legal rules and principles governing and underlying the jury system are transgressed, the action cannot be upheld. * * *." [1]

Coulthard v. Keenan, 256 Iowa 890, 129 N.W.2d 597, and Kracht v. Hoeppner, 258 Iowa 912, 917–918, 140 N.W.2d 913, 916 are both cases where the trial court's action granting a new trial was sustained.

In the first case the jury had been forced to deliberate until 2:00 a. m. and in the second case until 6:00 a. m.

We referred to those cases in Gibbs v. Wilmeth (Iowa), 157 N.W.2d 93, 100 and said: "In both cases we expressed disapproval of prolonged jury deliberation without providing adequate rest for the jurors." Again in State v. Kittelson (Iowa), 164 N.W.2d 157, 167, we said: " * * * In view of the disposition we need not pass on the assignment except to note we do not approve forcing the jury to deliberate to such a late hour. Here the verdict was returned at 1:45 a. m. Such procedure is not conducive to balanced judgment. * * *."

The foregoing policy pronouncements of this court (two of which resulted in new trials) limit the judicial discretion to be exercised by the trial court. The legislature has impliedly concurred in that policy by approving the change in our rule 199(b), Rules of Civil Procedure, to allow the court to allow the jury to separate overnight, on weekends, or holidays, or in emergencies. Acts of the 62nd General Assembly, chapter 475, rule 199(b), R.C.P., and the following session granted the same right to the trial court in criminal cases, Acts of the 63rd General Assembly, chapter 308, section 1.[2]

The cost of lodging 12 jurors cannot be allowed to interfere with the due deliberation of the jury. This is especially true where the state had already spent many hundreds of dollars in the judge's and court officers' salaries, jury fees and the like. Iowa does not have a statute fixing the time of night beyond which juries are not to deliberate. See Gorman v. New England Telephone & Telegraph Co., 103 N.H. 337, 172 A.2d 372. We do not attempt to put any time limit on how late at night a jury may be allowed to consider the case. Here, the jury deliberated until 2:00 a. m., then reported itself dead-

---

1. On rehearing the case was reversed on a different point. 104 N.W. 154.

2. The latter action was effective July 1, 1969, after date of trial.

locked, asked how long it must continue and were told there was no specific time limit. The reasonable conclusion was that they must remain out until they reached a verdict. Some 2½ hours later a verdict was returned. Under our recent prior holdings in civil cases the parties were denied a fair determination of the issues. If this finding is required under civil cases cited, it is even more important to adhere to the rule in criminal cases.

▮ The fact the trial court granted a new trial in the Kracht and Coulthard cases and refused a new trial in this case is not a valid basis for distinction. While the trial court has broad discretion in granting a new trial, the discretion is not unlimited. Here, as we have pointed out, the discretion to be exercised within the framework of repeated pronouncements by this court that unreasonably late deliberations by a jury are not conducive to a fair trial.

We are aware of the many cases where juries have been kept at their deliberations without rest for a much longer time than was involved here and the jury verdicts were upheld. In at least two annotations, 164 A.L.R. 1265 and 93 A.L.R.2d 627, reported cases are collected where jurors have been kept together without rest for as long as 40 hours and the eventual verdict was approved. We regard these and similar cases as vestiges of the early development of the jury system. Before the Juries Act, 1870 (England) the bailiff was sworn to keep the jury together without meat, drink or fire until a verdict was reached. A decision of some sort was foreordained.[3]

The change in attitude toward jury deliberations and accommodations is outlined in an English case from British Guiana, decided on appeal by the Privy Council.

Lord Denning authored the opinion in Shoukatallie v. R. [1961] 3 All England Reports, 996, 1000, A.C. 81 (1961): "In England, in olden times, there would have been nothing wrong in a judge telling the jury that they must agree and that he could not discharge them until they did agree; for that was, indeed, the law of the land. LORD COKE said that 'a jury sworn and charged in case of life or member cannot be discharged by the court or any other, but they ought to give a verdict'; see Co.Litt. 227b; Co.3rd Inst. 110; and SIR WILLIAM BLACKSTONE said that: 'when the evidence on both sides is closed, the jury cannot be discharged till they have given their verdict' see 4 BLACKSTONE'S COMMENTARIES 360. Strong measures of coercion were adopted to secure a verdict. The jury were not allowed to separate. They were kept in the jury room without meat, drink or fire (candlelight excepted) until they did agree. You have only to read the report of *Penn and Mead's Case* (1) to see what compulsion was brought to bear on jurors. COCKBURN, C. J., said:

" 'Our ancestors insisted on unanimity as the very essence of the verdict, but they were unscrupulous as to the means by which they obtained it'; see Winsor v. R. (2). All that is, of course, ancient history now. We have outlived those inhumanities. No longer is any measure of coercion acceptable. Once the judge has finished his summing-up the jury given in charge of the bailiff, they are still not allowed to separate, but they are provided with refreshment and, if need be, accommodation for the night in a hotel; see R. v. Neal (3)."

As early as 1801, Justice Kent, in considering the propriety of the court's action in declaring a mistrial because of jury disagreement, said in People v. Olcott, 2

---

3. "Good people, you cannot agree? Go [to John Allen, Marshall] and put them in a house until Monday, and let them not eat or drink. On that commandment John put them in a house without [food or drink]. At length on the same day about vespertime they agreed." Stanton, J., Annon.Y.B. 4 Edw. II (Seld.Soc. IV) 188 (1310). 2000 Famous Legal Quotations, p. 321.

Johnson's Cases 301, 309: "This power in the court, (to dismiss the jury) so far from impairing the goodness or safety of trial by jury, must add to its permanence and value. The doctrine of compelling a jury to unanimity, by pains of hunger and fatigue, so that the verdict, in fact, be founded not on temperate discussion, and clear conviction, but on strength of body, is a monstrous doctrine, that does not, as St. Germain evidently hints, stand with conscience, but is altogether repugnant to a sense of humanity and justice. A verdict of acquittal or conviction, obtained under such circumstances, can never receive the sanction of public opinion. And the practice of former times, of sending the jury in carts from one assise to another, is properly controlled by the improved manners and sentiments of the present day."

Portions of Justice Kent's statement are quoted in Commonwealth v. Moore, 398 Pa. 198, 157 A.2d 65, 93 A.L.R.2d 616. There the jury was out from 7:08 p. m. until 5:00 a. m. when the jury reported a deadlock. The judge sent them back for further deliberation which resulted in a verdict at 6:08 a. m. Over strong dissents of two justices the appellate court affirmed. The same court later referred to the Moore case in Commonwealth v. Clark, 404 Pa. 143, 170 A.2d 847, 848, as follows: "We recognize that in Commonwealth v. Moore, 1959, 398 Pa. 198, 157 A.2d 65, [93 A.L.R. 2d 616,] this court held, in a situation somewhat similar to the case at bar, that it was within a trial judge's discretion to direct a jury to deliberate through the night. In the Moore case, supra, however, we gave the widest latitude permissible to the court's discretion consistent with a defendant's right to a fair trial. We did not recommend the particular procedure used in that case and we certainly do not feel that an extension of our holding in Moore is warranted. To uphold the procedure followed in this case would be to greatly expand the permissive scope of a judge's discretion in such situations." In light of the strong dissents in the earlier case

the later treatment of all night deliberations appears significant.

Suffice to say that after careful examination of the problems involved and the authorities on the subject, this court has concluded a verdict returned after a 2:00 a. m. report by the jury that it was deadlocked, an inquiry as to how long they would have to deliberate, a reply that there was no specific time and a final verdict at 4:30 a. m., cannot be allowed to stand as the impartial, uncoerced unanimous verdict of the jury. Under such circumstances the premium is on stamina and physical strength rather than judgment.

III. Affidavits of three jurors accompanied the motion for new trial. The forewoman stated that from the bailiff's report "we understood the judge had stated we must continue our deliberations and must reach a verdict". She did not give the substance of the bailiff's words to the jury. The two other affidavits do not mention this understanding. Only one affidavit mentioned fatigue as a factor.

In reaching this conclusion we do not rely on whether one, as here, or five, as in State v. Green, 254 Iowa 1379, 121 N.W. 2d 89, 95 A.L.R. 810, said the lateness of the hour and exhaustion compelled their vote. The question of what inheres in the verdict and is thus not subject to juror affidavit need not be explored here. In Bashford v. Slater, 250 Iowa 857, 867, 96 N.W.2d 904, we said: That a juror may not impeach his verdict by testifying to the reason he reached it is well settled. Hicks v. Goodman, 248 Iowa 1184, 1195, 85 N.W. 2d 6; Keller v. Dodds, 224 Iowa 935, 943, 277 N.W. 467; In re Estate of Murray, 238 Iowa 112, 120, 26 N.W.2d 58.

"But the rule is also clear that a juror may make an affidavit or testify as to matters occurring in the jury room, and if what occurred amounted to misconduct, and if it was of such a character that it is reasonable to believe that it did influence the result of the deliberation and the final verdict, that verdict should not be allowed

to stand. Hicks v. Goodman and Keller v. Dodds, both supra; Hackaday v. Brackelsburg, 248 Iowa 1346, 1350, 1351, 85 N.W. 2d 514 and citations."

A statement by a juror that the lateness of the hour or exhaustion affected his or her verdict is unnecessary and is not considered. The lateness of the hour has heretofore been condemned on the basis of principles set forth. We need not decide what portions of the affidavits may be considered and what portions rejected.

IV. Defendant claims six photographs of the deceased were erroneously admitted into evidence as the passion and prejudice resulting from their introduction exceeded their probative value. Exhibits E, E1 and E2 were color photographs taken by the medical examiner depicting the scene of the crime when he arrived. Two show the position of the body and the pool of blood on the kitchen floor. The third shows the upper half of deceased's body alongside the pool of blood and shows where deceased was struck by the shotgun blast.

Exhibits G9 and G12 are black and white photographs taken at the scene of the crime by an agent from the Iowa Bureau of Criminal Investigation. One shows the body and room from a different angle than the color photographs and one shows the head and shoulders of the body from a direction which also shows the stairway from which defendant says the shot was fired.

Exhibit G1 is a photograph taken at the hospital of the upper half of deceased's nude body showing extent of the wound made by the shot.

"The admissibility of photographs is within the discretion of the trial court, and its ruling will not be interfered with on appeal except upon a clear showing of an abuse thereof. The trend of authority is to vest more discretion in the trial court in a matter of this kind. (Citations)" State v. Dillon (1968) Iowa, 161 N.W.2d 738, 741.

"If there was a just reason for permitting these exhibits to be introduced in evidence, the incidental fact that they were gruesome, that they tended to injure the defendant's case would not make their admission erroneous. Legitimate evidence may not be excluded because it may tend to arouse the feelings of the jurors." State v. Triplett (1956), 248 Iowa 339, 350, 79 N.W.2d 391, 397, cert. den., 357 U.S. 217, 78 S.Ct. 1358, 2 L.Ed.2d 1361; State v. Beckwith (1952), 243 Iowa 841, 845–846, 53 N.W.2d 867, 869.

We have allowed the trial court broad discretion in admitting pictures of murder victims into evidence. State v. Miller (1966), 259 Iowa 188, 191, 142 N.W.2d 394, 396; State v. McClain (1964), 256 Iowa 175, 182–183, 125 N.W.2d 764, 768, 4 A.L.R.3d 134; State v. Triplett, supra; State v. Beckwith, supra; State v. Heinz (1937), 223 Iowa 1241, 275 N.W. 10, 16, 114 A.L. R. 959. The exhibits here had more probative value and were less inflammatory than some approved by these authorities.

The State has the burden of proving its case before defendant puts in his evidence. It was within the trial court's discretion to admit the photographs depicting the scene. There were no duplications. Although the materiality of the nude photograph of the wound is not obvious, it does graphically explain the pathologist's testimony as to the size and location of the wound and offers proof of the distance from which the shot was fired. Defendant has cited no Iowa authorities in which we have held the trial court abused its discretion in admitting such photographs. We have found none.

Some of defendant's foreign authorities tend to support his position on the nude photograph, Archina v. People, 135 Colo. 8, 307 P.2d 1083; State v. Morgan, 211 La. 572, 30 So.2d 434, but they are not factually similar. Some support the State's position under the facts here. People v. Cavanaugh, 44 Cal.2d 252, 282 P.2d 53, 62; People v. Burns, 109 Cal.App.2d 524, 241

P.2d 308, 319, 242 P.2d 9; Kiefer v. State, 239 Ind. 103, 153 N.E.2d 899.

V. Defendant claims the remarks and demeanor of the trial court in the presence of the jury indicated a biased attitude were prejudicial to defendant's rights and deprived him of a fair trial. We have carefully reviewed the record on all incidents called to our attention including those made during argument. We do not believe they indicate anything more than a sincere effort on the part of the trial court to keep a hotly contested trial under control. Counsel for both the State and defendant were responsible for numerous verbal exchanges before the jury. The court expressed no opinion on the evidence. "The trial court is not a mere umpire of the contest before him, confined to rulings required by objections or requests of counsel. It is his duty to take part in the trial so that its orderly progress may be facilitated." State v. Jensen (1954), 245 Iowa 1363, 1368, 1369, 66 N.W.2d 480, 483.

■ Remarks by a trial judge while ruling on objections as to admissibility of evidence, are not erroneous unless they are unfair and prejudicial. State v. Fiedler (1967), 260 Iowa 1198, 1203, 152 N.W.2d 236, 240, and citations. We do not believe the actions and remarks of the trial court deprived defendant of a fair trial.

■ VI. Defendant called State agent Strasburg who had testified previously for the State to impeach another State's witness, Mr. Mack. On the stand Mr. Mack had denied hearing defendant tell Reverend Hulsether on the night of the shooting that it was an accident and he didn't know the gun was loaded. Strasburg testified Mack had told him he overheard such conversation between defendant and Reverend Hulsether.

On cross-examination, over defendant's objection that it was not proper cross-examination, State's attorney brought out that this was part of a longer conversation with Mack who also told Strasburg he overheard defendant tell the reverend "I shot her. There is no use denying it. I shot her".

Defendant opened this field of inquiry and the trial court did not abuse its discretion in permitting the State to inquire into other portions of the conversation. State v. Johnson (1968), Iowa, 155 N.W.2d 512, 515–516, and citations.

Defendant assigns several other errors as grounds for reversal. We have considered and passed on all matters likely to arise on retrial. The remaining assignments are not considered.

Reversed and remanded.

MOORE, C. J., and LARSON, MASON and LeGRAND, JJ., concur.

RAWLINGS, J., concurs in the result.

STUART and SNELL, JJ., dissent.

REES, J., takes no part.

STUART, Justice (dissenting).

I respectfully dissent from division II of the majority opinion and the result.

I join the majority in denouncing the practice of requiring the jury to deliberate without sleep all night or into the early morning hours. In most instances, it would seem to be the better procedure to provide sleeping quarters or permit the jury to separate overnight at a reasonable hour as authorized by R.C.P. 199(b) as amended by chapter 475, Laws of the Sixty-second General Assembly and made applicable to criminal cases by chapter 308, Laws of the Sixty-third General Assembly, First Session, page 482, even though the latter course may create other problems which could contaminate a jury verdict.

However, I do not agree that the evils of overnight deliberation are so absolute that we should go contrary to *all* the authority

in the country and deprive the trial court of its traditional broad discretion in determining how long a jury should deliberate. Coulthard v. Keenan (1964), 256 Iowa 890, 898, 129 N.W.2d 597, 601; State v. Siegel (1936), 221 Iowa 429, 434, 264 N.W. 613; 89 C.J.S. Trial § 482, p. 133; 53 Am.Jur. 677, Trial § 962.

It is true we have in recent cases stated our objection to requiring the jury to deliberate into the early hours of the morning. State v. Kittelson (1969), Iowa, 164 N.W.2d 157, 167; Gibbs v. Wilmeth (1968), Iowa, 157 N.W.2d 93, 100; Kracht v. Hoeppner (1966), 258 Iowa 912, 917–918, 140 N.W.2d 913, 916; Coulthard v. Keenan (1964), 256 Iowa 890, 898, 129 N.W.2d 597, 601; State v. Green (1963), 254 Iowa 1379, 1390, 121 N.W.2d 89, 93, 95 A.L.R. 810. We held it sufficient grounds to support the granting of a new trial in Kracht v. Hoeppner, supra, and Coulthard v. Keenan, supra. We did not decide whether it was reversible error in State v. Kittelson, supra, and Gibbs v. Wilmeth, supra. In State v. Green we held the circumstances which revealed the effect of prolonged deliberation on members of the jury deprived defendant of a fair trial and reversed the case on that ground. In so doing we considered the affidavits of five jurors who stated "they were exhausted and that it was impossible for them to properly deliberate, and some of them at least toward the end of the jury deliberation changed their ballot from acquittal to conviction by reason of complete exhaustion."

The majority opinion recognizes in division III that these matters should not have been considered. See also State v. Banks (1940), 227 Iowa 1208, 1211, 290 N.W. 534; State v. Siegel (1936), 221 Iowa 429, 432, 264 N.W. 613; In re Estate of Osborn (1919), 185 Iowa 1307, 1318, 168 N.W. 288.

Research indicates we went further in State v. Green, supra, in limiting the trial court's discretion than any other jurisdiction reviewed. The circumstances here are not nearly so aggravated as in Green.

In the following cases under similar circumstances it was held the trial court did not abuse its discretion in requiring the jury to continue deliberations without rest. DeGrandis v. Fay (1964) (CA 2 NY), 335 F.2d 173, 176 (24 hours after two notes from the jury expressing fatigue); Martin v. State (1940), 29 Ala.App. 395, 196 So. 753, 754 (overnight); Mills v. People (1961), 146 Colo. 457, 362 P.2d 152, cert. den., 369 U.S. 841, 82 S.Ct. 869, 7 L.Ed.2d 846 (over 27 hours); Cato v. State (1936), 183 Ga. 277, 188 S.E. 337, 338 (23 hours); Walker v. State (1965), 246 Ind. 386, 204 N.E.2d 850, 857 (over 14 hours); State v. Shelby (1933), 333 Mo. 610, 62 S.W.2d 721, 726 (over 26 hours); Commonwealth v. Moore (1959), 398 Pa. 198, 157 A.2d 65, 93 A.L.R.2d 616, 621–622 (overnight); Jones v. State (1945), 148 Tex.Cr.R. 374, 187 S.W.2d 400, 159 A.L.R. 739, 748 (24 hours); Glasser v. State (1921), 90 Tex. Cr.R. 116, 233 S.W. 969, 974 (24 hours). See Annos. 93 A.L.R.2d 627; 164 A.L.R. 1265.

The closest case to the facts here in which it was held the trial court abused its discretion is Commonwealth v. Clark (1961), 404 Pa. 143, 170 A.2d 847, 848. The court recognized it was within the trial court's discretion to direct a jury to deliberate through the night but held discretion was abused in that case because of the obvious confusion of the jury. Defendant had objected to continued deliberations.

The majority quotes from Jahnke v. State (1903), 68 Neb. 154, 94 N.W. 158, 167–168, 104 N.W. 154. I have no quarrel with the quoted language. There the jury deliberated six days. The verdict was not set aside because the record failed to show they were not rested during this extended period of time. The court recognized the general rule that the length of time a jury is kept together rests largely in the trial court. It is not authority for the proposi-

tion that the trial court abuses its discretion by letting a jury deliberate until 5:30 a. m.

I am not willing to state on this record that the trial court who was present, saw the jury and was cognizant of the circumstances then existing had no authority to permit the jury to deliberate until 5:30 a. m. I do not believe this act, ipso facto, makes the verdict of this jury one of coercion, which must be the reason for setting it aside.

II. There is a second feature of this particular case which is of even more concern. Defendant's attorney was with the judge when the jury was reported deadlocked at 2:00 a. m. He and the judge agreed the verdict urging instruction should not be given. No objection was made when the judge told the jury to continue deliberations. He did not request that the jury be put to bed.

In my mind it is unconscionable to permit a criminal defendant to remain silent and gamble on a favorable verdict secure in the knowledge that it will be set aside if it is unfavorable. The state has no comparable advantage in the event of an acquittal. "A defendant may not gamble on the verdict and then secure a new trial if he loses. When a jury should be discharged for failure to agree is usually a matter within the sound discretion of the trial court." Jenkins v. United States (1945), 5 Cir., 149 F.2d 118, 119, cert. den., 326 U.S. 721, 66 S.Ct. 27, 90 L.Ed. 427.

" * * * if a party obtains knowledge during the progress of the trial of acts of or affecting jurors, which he shall wish to urge as objections to the verdict, he must object at once, or as soon as the opportunity is presented, or be considered as having waived his right to object." 89 C.J.S. Trial § 483, p. 134.

If defendant had objected to keeping the jury deliberating or if the jury itself had protested, an entirely different situation would have been presented and I would, under such circumstances join in holding the trial court did abuse its discretion.

I would hold the trial court did not abuse its broad discretion under these circumstances and that defendant, in any event, waived his right to object by failing to do so when he had the opportunity.

I would affirm the trial court.

SNELL, J., joins in this dissent.